572 P.2d 786 (1977)
E. L. L., Petitioner,
v.
STATE of Alaska, Respondent.
No. 3374.
Supreme Court of Alaska.
December 23, 1977.
*787 John W. Hagey, Asst. Public Defender, David C. Backstrom, Deputy Public Defender, Fairbanks, Brian Shortell, Public Defender, Anchorage, for petitioner.
Peter A. Michalski, Asst. Dist. Atty., Harry L. Davis, Dist. Atty., Fairbanks, Avrum M. Gross, Atty. Gen., Juneau, for respondent.
Before BOOCHEVER, Chief Justice, and CONNOR, BURKE and MATTHEWS, Justices.

OPINION
BURKE, Justice.
This matter comes to us on petition for review.[1] The subject of the petition is an adjudication of contempt following defiance of an order of the superior court requiring petitioner, a minor child, to testify before a grand jury concerning alleged acts of sexual intercourse with a male teacher.
On March 9, 1977, a criminal complaint was filed charging the teacher in question with two counts of "statutory rape."[2] The charges were based on alleged acts of sexual intercourse between the accused and petitioner. At the preliminary hearing, and later before a state grand jury, petitioner refused to answer any questions concerning such conduct. On application of the district attorney, the superior court ordered that she do so. After being informed of petitioner's refusal to answer the questions addressed to her, in violation of its order, the court found her guilty of contempt and ordered her placed in detention until such time as she might purge herself of the contempt by answering the questions.[3] The proceedings giving rise to this petition followed.
Petitioner's first contention is that the court's order violates her constitutional right against self-incrimination.[4] Petitioner argues:
[T]here are several violations of law that could be alleged which would lead to her punishment. These include AS 11.40.080 and Fairbanks General Code [of municipal ordinances] 6.401. Violations of AS 47.10.010(a)(1), (3) and (6) could also be alleged which would subject E.L.L. to possible adjudications leading to state custody and potential placement away from her family in various settings (institutions, group homes or foster homes) for the balance of her minority. Such drastic possibilities should be sufficient to allow a minor to exercise a privilege against self-incrimination.[5]
*788 We find her argument unpersuasive, given the facts in this case.
The privilege against self-incrimination applies where the answers elicited could support a conviction or might furnish a link in the chain of evidence leading to a conviction. McConkey v. State, 504 P.2d 823, 825-26 (Alaska 1972). But, a witness may not refuse to testify where there is no real or substantial hazard of incrimination; the witness is not excused from answering merely because he declares that in so doing he would incriminate himself. Id. Moreover, we view the privilege as applicable only where incarceration or other sanctions that are criminal in nature are a potential hazard. Under the provisions of law cited by petitioner there is no such hazard.
AS 47.10.010(a)(3) gives the superior court jurisdiction to act under the children's code when a minor under eighteen years of age "is habitually truant from school or home, or habitually so conducts himself as to injure or endanger the morals or health of himself or others." Under AS 47.10.010(a)(6) such jurisdiction exists when the child "associates with vagrant, vicious or immoral people, or engages in an occupation or is in a situation dangerous to life or limb or injurious to the health, morals, or welfare of himself or others." A child who is shown to come within the provisions of either AS 47.10.010(a)(3) or (6) can be adjudged a "child in need of supervision." AS 47.10.290(7). A child who comes within the provisions of AS 47.10.010(a)(6) can also be adjudged a "dependent minor." AS 47.10.290(3). In neither case, however, is the child subject to incarceration or other sanctions criminal in nature. In the Matter of E.M.D., 490 P.2d 658, 660 (Alaska 1971), we held:
The only instance under our children's laws authorizing institutionalization or incarceration is when the child has violated the laws of the state, or any of its political subdivisions, and in turn has been adjudged a delinquent minor.
For that reason, petitioner's reliance on AS 47.10.010(a)(3) and (6) is misplaced. The possible consequences of proceedings brought under those provisions do not give rise to a right against self-incrimination.
On the other hand, when a person under the age of eighteen years, such as petitioner, "violates a law of the state, or an ordinance or regulation of a political subdivision of the state," he can be adjudged a "delinquent minor." AS 47.10.010(a)(1); AS 47.10.080(a); AS 47.10.290(2). One possible consequence of such an adjudication is commitment to a juvenile facility until the age of nineteen. AS 47.10.080(b)(1).[6] Moreover, if there is probable cause to believe the minor is delinquent and the court finds that he is not amenable to treatment as a juvenile, he may be prosecuted as if he were an adult. AS 47.10.060(a); P.H. v. State, 504 P.2d 837 (Alaska 1972). Thus, there is always some danger of incarceration, or other criminal sanctions, when a child commits an act which would be a crime if committed by an adult. The state concedes that under such circumstances a child has a privilege against self-incrimination. We agree. See In Re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967).
Certain forms of sexual conduct or the exposure of one's person or private parts are made criminal by AS 11.40.080[7] and Section 6.401 of the Fairbanks General Code [of municipal ordinances].[8] Such being *789 the case, petitioner would have a constitutional right not to testify regarding any matter that might tend to show that she has violated one of those provisions.
However, those provisions, as we construe them, have no application to any of the alleged activities of the individuals in this case. One act of intercourse occurred, if at all, in the teacher's home. The other is alleged to have occurred in a storage room at the school where the teacher is employed. There is no contention that anyone was present, on either occasion, except petitioner and the accused. AS 11.40.080 and Section 6.401 both pertain to acts committed in a "public place." An act committed in teacher's home utterly fails to meet that requirement. Also, given the overall type of conduct those provisions seem to be designed to prevent, we cannot believe that they were ever intended to apply to acts committed by two persons behind the closed doors of a storage room, with no other person present, despite the fact that that room is located in a public school building.
Petitioner next contends that the superior court erred in committing her to custody for contempt. Citing our opinions in L.A.M. v. State, 547 P.2d 827 (Alaska 1976), and Johansen v. State, 491 P.2d 759 (Alaska 1971), she argues that her conduct, at least in part, amounted to a criminal contempt, giving her the right to a trial by jury. Again, we find petitioner's argument unpersuasive.
Nothing in L.A.M. or Johansen suggests that the superior court erred in this case. To the contrary, those decisions support the action that was taken against petitioner. It is clear that the superior court's dominant purpose in remanding petitioner to custody was to force compliance with its order that she testify before the grand jury. It is equally clear that petitioner has the ability to comply, but simply chooses not to do so. Her imprisonment is conditioned solely on her continued refusal to testify, in defiance of that order. Thus, she indeed carries the key to her freedom in her own pocket. Until such time as she agrees to testify or the grand jury is discharged,[9] petitioner may properly be confined for her refusal to comply with the superior court's order.[10]
The order of the superior court is affirmed. We find it unnecessary to discuss the other issues raised by the petition.
MATTHEWS, Justice, dissenting.
The privilege against self-incrimination arises not only in the face of criminal penalties. It protects against threats to personal liberty without regard to nice distinctions between forms of action:

*790 And our Constitution guarantees that no person shall be `compelled' to be a witness against himself when he is threatened with deprivation of his liberty  a command which this Court has broadly applied and generously implemented in accordance with the teaching of the history of the privilege and its great office in mankind's battle for freedom.
Re Gault, 387 U.S. 1, 50, 87 S.Ct. 1428, 1456, 18 L.Ed.2d 527, 558-559 (1967) (footnote omitted). Under Alaska's Juvenile Code, E.L.L.'s testimony may well supply the foundation for an adjudication that she is a dependent minor.[1] If she is found to be dependent, she faces the possibility of removal from her family home and commitment to the Department of Health and Social Services until her 20th birthday.[2] While such commitment may not include incarceration, as in the case of an adjudication of delinquency, it may include placement in a group foster home under state supervision. This would involve an obvious and significant encroachment on her personal liberty.
Further, E.L.L. has a right to live with her family without state intrusion. That right is a constitutionally guaranteed liberty under the Fourteenth Amendment to the United States Constitution. In Meyer v. Nebraska, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923), the Supreme Court of the United States held that the guarantee of liberty of the Fourteenth Amendment "[w]ithout doubt ... denotes . . the right of the individual ... to marry, establish a home and bring up children... ." 262 U.S. at 399, 43 S.Ct. at 626, 67 L.Ed. at 1045. In Prince v. Massachusetts, 321 U.S. 158, 64 S.Ct. 438, 88 L.Ed. 645 (1944), the Supreme Court, in reference to Meyer v. Nebraska, supra, and Pierce v. Society of Sisters, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925), stated:
It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder... . And it is in recognition of this that these decisions [Meyer and Pierce] have respected the private realm of family life which the state cannot enter.
321 U.S. at 166, 64 S.Ct. at 442, 88 L.Ed. at 652 (citation omitted). In Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972), the Supreme Court struck down an Illinois statute which deprived an unmarried father of custody of his children upon the death of their mother. The court held that the right to the integrity of the family unit was protected by the Fourteenth Amendment due process and equal protection clauses, as well as by the Ninth Amendment. In Roe v. Conn, 417 F. Supp. 769 (M.D.Ala. 1976), a three judge court held, in light of these authorities, that the child, as well as the parent, has a constitutional right to family integrity.
In my opinion, the consequences of an adjudication of dependency involve state intrusions into a child's liberty as significant as most criminal sanctions. Threatened with both state wardship and deprivation of her right to family integrity, E.L.L. may not constitutionally be compelled to be a witness against herself.
NOTES
[1] See Rules 23 and 24, Alaska R. App. P.
[2] AS 11.15.120(a) provides in part:

A person who ... (2) being 16 years of age or older, carnally knows and abuses a person under 16 years of age, is guilty of rape.
An act of intercourse with a female person under 16 years of age, with or without her actual consent, is rape, since in the eyes of the law she is incapable of consent. Torres v. State, 521 P.2d 386 (Alaska 1974). This offense is commonly known as "statutory rape." R. Perkins, Criminal Law 152-54 (2d ed. 1969).
[3] Disobedience of a lawful order of the court is a contempt of the authority of the court. AS 09.50.010(5). So, also, is refusal to answer as a witness. AS 09.50.010(10). AS 09.50.050 provides:

When the contempt consists of the omission or refusal to perform an act which is yet in the power of the defendant to perform, he may be imprisoned until he has performed it.
[4] The privilege against self-incrimination is embodied in the Fifth Amendment to the Constitution of the United States and in Art. I, sec. 9 of the Constitution of Alaska.
[5] Petition for Review at 5.
[6] The Department of Health and Social Services may petition the court for continued supervision for an additional one-year period if the minor has not responded to treatment.
[7] AS 11.40.080 provides:

A person who wilfully and lewdly exposes his person or the private parts of his person in a public place, or in a place where there are present other persons to be offended or annoyed, or who takes part in a model artist exhibition, or makes other exhibition of himself to public view, or to the view of a number of persons, which is offensive to decency, or which is adapted to excite vicious or lewd thoughts or acts, upon conviction, is punishable by imprisonment in a jail for not less than three months nor more than one year, or by a fine of not less than $50 nor more than $500. (emphasis added).
[8] Section 6.401 of the Fairbanks General Code provides:

A person over the age of twelve years commits the offense of public indecency if:
(a) He intentionally exposes his genitals, pubic hair region, or anal region to public view;
(b) While in a public place, he engages in any conduct consisting of contact between the sex organs of two or more persons or between the sex organs of one person and the mouth or anus of another; or
(c) He urinates or defecates on any portion of a public place not existing for the purpose of receiving urine or feces.
Section 6.101(h) of the General Code defines "public place" as follows:
A `public place' is a place to which the general public has access and includes, but is not limited to, hallways, lobbies and other parts of apartment houses and hotels not constituting rooms or apartments designated for actual residence, public ways and retail business establishments.
[9] Coercive confinement of a recalcitrant grand jury witness must end when the grand jury is discharged since after that point the witness has no further opportunity to purge himself of contempt. Farr v. Pitchess, 409 U.S. 1243, 1244, 93 S.Ct. 593, 34 L.Ed.2d 655, 657 (1973) (Douglas, Circuit Justice); Shillitani v. United States, 384 U.S. 364, 371, 86 S.Ct. 1531, 1536, 16 L.Ed.2d 622, 627 (1966). Similarly, imprisonment cannot be used to coerce evidence after a trial has terminated. Yates v. United States, 355 U.S. 66, 72, 78 S.Ct. 128, 132, 2 L.Ed.2d 95, 101 (1957).
[10] It has come to our attention that despite E.L.L.'s refusal to testify, the grand jury returned an indictment against the teacher, apparently based on other evidence. Thus, this matter may be technically moot. Nevertheless, in view of the importance of the issues involved, we have chosen to address those issues.
[1] AS 47.10.290(3); AS 47.10.010(a)(4) through (9).
[2] AS 47.10.080(c)(1).