Robert MACE, Petitioner,

v.

Jeffrey AMESTOY, Attorney General, State of Vermont, and Joseph Patrissi, Vermont Commissioner of Corrections, Respondents.

Civ. A. No. 90-177.

United States District Court, D. Vermont.

May 10, 1991.

William A. Nelson, Office of Vermont Defender Gen., Montpelier, Vt., for petitioner.

Donald Hartman, Jr., Asst. Atty. Gen., Vermont Dept. of Corrections, Waterbury, Vt., for respondents.

## OPINION AND ORDER

PARKER, District Judge.

Robert Mace petitions for a writ of habeas corpus. He claims that revocation of his probation violated his Fifth Amendment right against self-incrimination, his due process right to fair notice of his probation conditions and his First Amendment right against coerced speech. We grant the petition for habeas corpus on the ground that the revocation of probation was a violation of petitioner's Fifth Amendment right against self-incrimination.

## BACKGROUND

In July 1987, petitioner was charged in state court with sexually assaulting his fourteen year-old stepdaughter on or about December 31, 1985 in violation of 13 V.S.A. § 3252(a)(3) (Supp.1990) (statutory rape). The affidavit in support of the complaint stated, in part, that the victim reported that petitioner had been engaging in sexual intercourse with her since she was eleven years old. On March 12, 1988, petitioner pled guilty to an amended information that alleged an act of lewd and lascivious conduct on December 31, 1985, in violation of 13 V.S.A. § 2602 (1974). The amended information stated that "Robert Mace did place his penis in contact with [the victim's] leg with the intent of appealing to the sexual desires of himself." The factual basis that the prosecutor put forth at the change of plea indicated that petitioner denied penetration.

Petitioner was thereafter sentenced to a term of one to five years, all suspended, with an order of probation. Condition # 25 of the probation order was as follows:

> You shall attend, participate, and complete the sexual therapy program at Orange County Mental Health in Randolph as directed by Mr. Sargent and by your probation officer.

Petitioner participated in the sexual treatment program for six months during which time he continued to deny having sexual intercourse with his stepdaughter. One of the goals of the program is to get people to make full disclosure about their crimes. Petitioner admitted to having oral sex with her, but insisted there was no intercourse. On December 7, 1988, the petitioner, his probation officer and his therapist met to discuss petitioner's progress in therapy. The probation officer and the therapist told petitioner that they believed his denial of intercourse was a stumbling block to therapy; petitioner said that he would not admit to sexual intercourse. On December 8, 1988, petitioner's probation officer swore out a probation violation complaint, alleging violation of Condition # 25: Petitioner failed to complete the sexual therapy program, because he continued to deny sexual intercourse with his stepdaughter.

At the probation revocation hearing, the victim testified that she was now convinced that her stepfather's sexual abuse had not involved sexual intercourse, and Mr. and Mrs. Mace both testified to facts that would support the conclusion that sexual intercourse never happened. There was also evidence that the victim's doctor reported that she was still a virgin. Despite this evidence, the Vermont District Court, relying on the testimony of the therapist, found that sexual intercourse did in fact occur. Finding a violation of the probation conditions, the court revoked probation and sentenced petitioner to serve 60 days of the suspended sentence. Execution of the sentence was stayed pending appeal to the Vermont Supreme Court.

On appeal, petitioner claimed that the revocation of probation violated his Fifth Amendment right against self-incrimination, his due process right to fair notice of his probation conditions and his First Amendment right against coerced speech. The Vermont Supreme Court rejected petitioner's arguments and affirmed the revocation of probation. *State v. Mace*, 154 Vt. 430, 578 A.2d 104 (1990).

Petitioner now raises the same claims in this habeas corpus action brought pursuant to 28 U.S.C. § 2254. On July 16, 1990, Magistrate Judge Jerome Niedermeier stayed the execution of the sentence pending resolution of the petition, pursuant to 28 U.S.C. § 2251. On November 27, 1990, the Magistrate Judge recommended that this court grant the petition for a writ of habeas corpus, on the ground that the revocation of probation violated petitioner's Fifth Amendment right against self-incrimination. Both parties filed objections to the Magistrate Judge's Report and Recommendation. Pursuant to Fed.R.Civ. P. 72 and 28 U.S.C. § 636(b)(1) we make a *de novo* determination upon the record before the Magistrate.

## DISCUSSION

I. *Right to Fair Notice of Probation Conditions*

Petitioner claims he did not receive fair notice at the time of sentence that participation in the sexual treatment program would require his admission of sexual intercourse with his stepdaughter. The loss of liberty entailed in the revocation of probation is a serious deprivation requiring the probationer to be accorded due process. *Gagnon v. Scarpelli*, 411 U.S. 778, 781–82, 93 S.Ct. 1756, 1759–60, 36 L.Ed.2d 656 (1973); *Morrissey v. Brewer*, 408 U.S. 471, 480–81, 92 S.Ct. 2593, 2599–2600, 33 L.Ed.2d 484 (1972). The probationer must be given "fair warning of acts which may lead to revocation." *United States v. Simmons*, 812 F.2d 561, 565 (9th Cir.1987) (citing *United States v. Dane*, 570 F.2d 840, 843 (9th Cir.1977), *cert. denied*, 436 U.S. 959, 98 S.Ct. 3075, 57 L.Ed.2d 1124 (1978)); *see also State v. Bubar*, 146 Vt. 398, 405, 505 A.2d 1197, 1201 (1985) ("[D]efendant is entitled to know what conduct is forbidden before the initiation of a probation revocation proceeding."). In addition, when violation of a condition is not a criminal act, due process mandates actual notice. *Simmons*, 812 F.2d at 565. In Vermont, conditions of probation are imposed by the court and the defendant must "be given a certificate explicitly setting forth the conditions upon which he is being released." 28 V.S.A. § 252(b), (c) (1986). "Fair notice can also be provided by the instructions and directions given to defendant by his or her probation officer." *State v. Peck*, 149 Vt. 617, 620, 547 A.2d 1329, 1331 (1988).

While there was no explicit condition of probation on the probation warrant that required petitioner to disclose his having sexual intercourse with his stepdaughter as part of the sexual treatment program, petitioner did sign the probation condition that required him to "complete" the sexual therapy program "as directed by" his therapist and "approved by" his probation officer. Petitioner was told at the beginning of his attendance at the sexual therapy group that he would have to take responsibility for all of his sexual conduct, in order to successfully complete the sexual offender program. The probation officer, as well as the therapist, put petitioner on actual no-

tice that his failure to admit the sexual intercourse was interfering with the successful completion of the treatment program. In other words, petitioner was given fair notice that his refusal to admit the full extent of his sexual conduct would be a violation of the probation conditions. Revocation of probation was therefore not a violation of due process.

## II. *Fifth Amendment Right Against Self–Incrimination*

Petitioner argues that forcing him to admit to sexual intercourse violates his right against self-incrimination since he could be prosecuted for sexual assault. We agree.

The Fifth Amendment privilege against self-incrimination

> not only protects the individual against being involuntarily called as a witness against himself at a criminal trial in which he is a defendant, but also "privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings ... unless and until he is protected at least against the use of his compelled answers."

*Minnesota v. Murphy*, 465 U.S. 420, 426, 104 S.Ct. 1136, 1141, 79 L.Ed.2d 409 (1984) (quoting *Lefkowitz v. Turley*, 414 U.S. 70, 77–78, 94 S.Ct. 316, 322, 38 L.Ed.2d 274 (1973)). A person does not lose his Fifth Amendment right simply because he has been convicted of a crime. Even where a person is imprisoned or on probation, if the state compels him to make incriminating statements that could be used in a prosecution against him for a crime other than for which he has been convicted, his Fifth Amendment rights have been violated. *Murphy*, 465 U.S. at 426, 104 S.Ct. at 1141.

As a general rule, the Fifth Amendment privilege must be affirmatively asserted. Answers to questions are not considered to be compelled within the meaning of the Fifth Amendment unless the person is required to answer over his valid claim of the privilege. If he chooses to answer, "his choice is considered to be voluntary because he was free to claim the privilege and would suffer no penalty as the result of his decision to do so." *Murphy*, 465 U.S. at 429, 104 S.Ct. at 1143. A voluntary statement is admissible at a future criminal proceeding.

Nevertheless, there are certain well-defined exceptions to the general rule. In each of these situations, the individual is deprived of his " 'free choice to admit, to deny, or to refuse to answer.' " *Garner v. United States*, 424 U.S. 648, 657, 96 S.Ct. 1178, 1183, 47 L.Ed.2d 370 (1975) (quoting, *Lisenba v. California*, 314 U.S. 219, 241, 62 S.Ct. 280, 292, 86 L.Ed. 166 (1941)). In such cases, the privilege becomes "self-executing":

> [I]f the State, either expressly or by implication, asserts that invocation of the privilege would lead to revocation of probation, it would have created the classic penalty situation, the failure to assert the privilege would be excused, and the probationer's answers would be deemed compelled and inadmissible in a criminal prosecution.

*Murphy*, 465 U.S. at 435, 104 S.Ct. at 1146.

In *Murphy*, the Supreme Court found that the state did not impose an impermissible penalty on Murphy for his exercise of his Fifth Amendment privilege. Murphy pled guilty to a sex-related charge and was given a suspended prison sentence and placed on probation. The conditions of his probation required that he participate in a sexual offenders treatment program and that he be truthful with his probation officer in all matters. In a meeting with his probation officer, Murphy admitted that he had committed a prior rape and murder unrelated to the crime to which he had pled guilty. After being indicted for first-degree murder, Murphy tried to suppress the confession partly on the ground that it was obtained in violation of his Fifth Amendment rights. The Supreme Court held that Murphy was not in the "classic penalty" situation of either choosing to make incriminating statements that could be used in a later criminal prosecution or, alternatively, having his probation revoked for remaining silent. *Id.* at 436–39, 104 S.Ct. at 1147–49.

The Court explained that the condition of his probation, requiring him truthfully to answer his probation officer's questions, was no different than the compulsion felt by a witness who is required to testify. The truthfulness condition only prohibited false statements; it did not go further. In other words, Murphy was not in a penalty situation where his Fifth Amendment privilege against self-incrimination became self-executing; he was in a position where he had to affirmatively assert his Fifth Amendment privilege.

The instant case is distinguishable from *Murphy*. The condition of petitioner's probation, as interpreted, did go beyond a prohibition against falsehood. It actually required admission of sexual intercourse—a criminal act for which petitioner could be prosecuted. He was threatened with, and later subjected to, probation revocation for his refusal to make such an admission. He was therefore placed in the "classic penalty" situation and the privilege became self-executing.

The Vermont Supreme Court found that petitioner was not in the "classic penalty" situation because there was no "realistic threat of self-incrimination." *Mace*, 578 A.2d at 108 (citing *Murphy*, 465 U.S. at 435 n. 7, 104 S.Ct. at 1146 n. 7). According to the Vermont Supreme Court, petitioner could not be prosecuted for sexual assault for the conduct on December 31, 1985, that led to the lewd and lascivious conviction, because lewd and lascivious conduct is a lesser included offense of sexual assault. *Mace*, 578 A.2d at 107 (a defendant convicted of a related lesser offense pursuant to a plea agreement cannot later be prosecuted for the originally charged greater offense). We agree.

■ However, the Vermont Supreme Court also held that while petitioner could still face prosecution for having committed different sexual acts against his step-daughter on different days, this was only "theoretically true"; the threat of self-incrimination was not "realistic" because prosecution was unlikely. *Id.* The proper consideration, however, is the nature of the coerced disclosure, not the likelihood of prosecution. The privilege "protects against any disclosures that the witness reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used." *Kastigar v. United States*, 406 U.S. 441, 445, 92 S.Ct. 1653, 1656, 32 L.Ed.2d 212 (1972) (citing *Hoffman v. United States*, 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951)).

Once the potential for incrimination is shown, the person need not show an intention on the part of the government to commence a criminal prosecution.

In *United States v. Edgerton*, 734 F.2d 913 (2d Cir.1984), we rejected [the] approach—that focused on the government's intention to prosecute—in favor of one that looks only to whether answering the question would tend to incriminate the witness. *Id.* at 921. In *Edgerton* we held that a witness need not go beyond the threshold showing of potential incrimination—and be required to prove that the government will prosecute him—in order to be entitled to the privilege. *Id.* *See United States v. Jones*, 703 F.2d 473, 477–78 (10th Cir. 1983); *see also United States v. Miranti*, 253 F.2d 135, 139 (2d Cir.1958) (the assertion of the privilege does not depend upon the trial court's assessment of the likelihood of prosecution). The claimant of the privilege may be forced to answer only when his fear of incrimination is unfounded.

*Estate of Fisher v. Commissioner of Internal Revenue*, 905 F.2d 645, 649 (2d Cir. 1990). Making the protection of the Fifth Amendment hinge on the likelihood of prosecution "would nullify the privilege." *United States v. Miranti,* 253 F.2d at 139. The petitioner could not possibly assess the likelihood of prosecution which is totally dependent upon the discretion of the state's attorney.

■ Contrary to the state's position, the state has the burden of eliminating the threat of incrimination. If the state wishes to carry out rehabilitative goals in probation by compelling offenders to disclose

852

their criminal conduct, it must grant them immunity from criminal prosecution.[1]

> [A] State may validly insist on answers to even incriminating questions and hence sensibly administer its probation system, as long as it recognizes that the required answers may not be used in a criminal proceeding and *thus eliminates the threat of incrimination.* Under such circumstances, a probationer's "right to immunity as a result of his compelled testimony would not be at stake," *Sanitation Men v. Commissioner of Sanitation,* 392 U.S. 280, 284 [88 S.Ct. 1917, 1919, 20 L.Ed.2d 1089] (1968), and nothing in the Federal Constitution would prevent a State from revoking probation for a refusal to answer that violated an express condition of probation or from using the probationer's silence as "one of a number of factors to be considered by the finder of fact" in deciding whether other conditions of probation have been violated. *Lefkowitz v. Cunningham,* [431 U.S. 801,] 808 n. 5 [97 S.Ct. 2132, 2137 n. 5, 53 L.Ed.2d 1] [(1977)].

*Murphy,* 465 U.S. at 435 n. 7, 104 S.Ct. at 1146 n. 7 (citations omitted) (emphasis added). The Magistrate Judge adopted this position and found that the state should have assured that petitioner's answers to questions about sexual conduct with his stepdaughter would not be used against him. "The petitioner should not be left to the good intentions of the state when forced to incriminate himself or face incarceration." Magistrate Judge's Report, p. 9.

Moreover, the Vermont Supreme Court's focus on the state's rehabilitative purpose in compelling the petitioner to admit that he had sexual intercourse with his stepdaughter is misplaced, because what is at issue is the disclosure, not the purpose of the disclosure. Certainly the state has a legitimate rehabilitative purpose in demanding full disclosure, but that does not make the disclosure any less incriminating. "[C]itizens may not be forced to incriminate themselves merely because it serves a governmental need." *United States v. Oliveras,* 905 F.2d 623, 628 (2d Cir.1990) (citing *Lefkowitz v. Cunningham,* 431 U.S. 801, 808, 97 S.Ct. 2132, 2137, 53 L.Ed.2d 1 (1977)).

To conclude, we hold that a person in a probation setting can not be forced to incriminate himself without the state granting him immunity first.[2]

## CONCLUSION

This court adopts the Magistrate Judge's Report and Recommendation in part. We grant the petition for a writ of habeas corpus on Fifth Amendment grounds and vacate the revocation of probation.

---

1. Respondents claim that *if* there were a realistic threat of subsequent prosecution, the remedy is to bar subsequent prosecution. This suggestion defies logic. If Mace had admitted to the sexual intercourse, barring subsequent prosecution would then be the proper remedy for violation of Mace's Fifth Amendment rights. But, in this case, Mace chose to remain silent and suffer the penalty that was imposed as a result of his exercise of his Fifth Amendment rights. Hence, the penalty should be removed.

2. Petitioner argues that the state is violating his right to free speech by compelling him to admit to having committed sexual intercourse with the victim. Having held that Mace cannot be compelled to speak on Fifth Amendment grounds, this court sees no occasion to address whether there exist independent First Amendment grounds upon which Mace can rely.