**Daryle D. JAMES, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–8109.**

Court of Appeals of Alaska.

Aug. 8, 2003.

---

Dan S. Bair, Anchorage, for Appellant.

Nancy Simel, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Gregg D. Renkes, Attorney General, Juneau, for Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

## OPINION

COATS, Chief Judge.

The superior court revoked Daryle D. James's probation for violating a probation condition requiring him to participate in a sex offender treatment program. James was rejected for sex offender treatment because he would not admit and take responsibility for his convictions for sexual abuse of a minor in the second degree and sexual assault in the second degree. James argues that his privilege against self-incrimination protected him from having to admit these prior offenses because he had a pending application for post-conviction relief, which, if successful, could result in a new trial at which his statements concerning these offenses could be used as evidence against him. He also points out that because he had previously testified that he had not committed the offenses, if he participated in sex offender treatment and admitted these offenses, the State could use his admissions to prosecute him for perjury. We conclude that James's refusal to discuss his offenses was protected by the privilege against self-incrimination. We therefore reverse the revocation of his probation.

*Background information*

James was on probation for his 1995 convictions for sexual abuse of a minor in the second degree and sexual assault in the second degree. The superior court sentenced James to a composite sentence of 10 years with 4 years suspended.[1] A special condition of James's probation required James to participate in a sex offender treatment program while incarcerated. The court placed James on probation for a period of 5 years following his release.

James subsequently filed an application for post-conviction relief. After an evidentiary hearing, Superior Court Judge Michael A. Thompson denied James's application. While Judge Thompson's denial of the post-conviction relief application was on appeal, James's probation officer filed a petition to revoke James's probation on the ground that James had not participated in a sex offender treatment program.

Judge Thompson held a hearing in February 2001 to determine the merits of the probation revocation petition. At the hearing, John Steven Dempsey, a clinical social worker who worked with convicted sex offenders for the Department of Corrections, testified that he had met with James to determine if James was amenable to participate in a sex offender treatment program. Dempsey testified that when he asked James about what he had done, James responded by telling Dempsey, "I've invoked the Fifth Amendment, I'm not going to talk about any of this because basically I didn't do it and I'm under appeal." Dempsey told James that it did not make any sense to talk to him until the appeal was settled. Dempsey testified that the program could not treat someone who was denying his guilt.

After Dempsey's original meeting with James, James's probation officer asked the Office of the Attorney General for an opinion about whether James had a valid privilege against self-incrimination. The Office of the Attorney General informed the department that the privilege against self-incrimination did not excuse James from participating in sex offender treatment. James's probation officer informed James of this decision and told him that he would have another opportunity to meet with Dempsey.

At the subsequent meeting, James again denied committing the crimes for which he had been convicted and refused to talk to Dempsey because his case was on appeal. After Dempsey reported this to James's probation officer, the probation officer filed the petition to revoke James's probation.

At the conclusion of the evidentiary hearing on the petition to revoke James's probation, James argued that he had a Fifth Amendment right to remain silent and that the State could not compel him to admit that he had committed the offenses for which he had previously been convicted.

Judge Thompson ruled that James had simply not invoked his Fifth Amendment rights. He concluded that James was merely insisting that he was innocent and that this did not excuse him from satisfying the probation condition to obtain sex offender treatment. He found that James was in violation of his probation. However, Judge Thompson delayed disposition for six months in the hope that this court would issue a decision on James's application for post-conviction relief, possibly clarifying any Fifth Amendment concerns.

Approximately six months later, in August of 2001, Judge Thompson held a disposition hearing. Judge Thompson imposed 1 year of James's 4–year suspended sentence. Judge Thompson again concluded that James had not exercised his Fifth Amendment rights. He concluded that, regardless of the status of James's appeal, James would under any circumstances continue to insist that he had not committed the crimes for which he had been convicted.

*James asserted his privilege against self-incrimination*

■ The Fifth Amendment of the United States Constitution protects a person in a

---

1. *James v. State,* Alaska App. Memorandum Opinion and Judgment No. 3734, 1997 WL 796507 (Dec. 24, 1997).

criminal case from being compelled by the government to be a witness against himself.[2] A person claiming the protection of the Fifth Amendment must affirmatively invoke it.[3] We initially must decide whether James invoked his Fifth Amendment rights. Judge Thompson apparently concluded that James was not invoking his privilege against self-incrimination because James insisted that he did not commit the offenses for which he had been convicted. He concluded that, even if James's appeals were final, James would continue to deny committing the offenses.

■ But a review of the record shows that James consistently invoked his privilege against self-incrimination. Although James did repeatedly declare in his interviews with Dempsey that he was innocent, he also indicated that he was invoking the Fifth Amendment and that he would not talk about any of the offenses because he had an appeal pending. Dempsey recognized that James was invoking his Fifth Amendment rights, and he informed the Department of Corrections. In response, the Department of Corrections contacted the Office of the Attorney General to determine whether James had a valid Fifth Amendment right to refuse to discuss the offenses. The Office of the Attorney General responded that he did not, and the Department of Corrections adopted that position. Aside from Judge Thompson, there seems little question that everyone connected to the case understood that James was attempting to exercise his Fifth Amendment right to not discuss the offenses for which he had been convicted. We accordingly conclude that James invoked his right to remain silent.

*James had a Fifth Amendment right to refuse to discuss the offenses for which he had been convicted*

■ To establish a Fifth Amendment claim, parties invoking the privilege have the burden of demonstrating a valid reason to believe that their compelled statements might incriminate them.[4] This burden is not great: "To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result." [5]

■ There is no question that requiring James to discuss the offenses for which he had been convicted was an attempt to elicit testimonial evidence. Furthermore, the State does not appear to contest that James's statements were compelled—because James faced imprisonment based on his failure to admit his offenses.[6] The State contends, however, that James does not face a threat of incrimination sufficient to give rise to a Fifth Amendment claim of privilege.

In *Gyles v. State*, this court explained that "[a] probationer or parolee cannot validly invoke the constitutional privilege … when there is 'no real or substantial hazard of incrimination.' " [7] "[A]n individual faces a hazard of incrimination whenever 'the answers elicited could support a conviction or might furnish a link in the chain of evidence leading to a conviction.' " [8] Thus the question becomes whether James faced a real or substantial hazard that his admitting responsibility for the crimes for which he was convicted could support a conviction or furnish a link in the chain of evidence leading to a conviction.

Dempsey, the social worker, testified that when he interviews defendants to evaluate them for treatment, the defendant's statements are not confidential, and he shares any information he obtains with the probation

---

**2.** U.S. Const. amend. V.

**3.** *United States v. Monia*, 317 U.S. 424, 427, 63 S.Ct. 409, 410–11, 87 L.Ed. 376 (1943).

**4.** *Hoffman v. United States*, 341 U.S. 479, 486–87, 71 S.Ct. 814, 817–18, 95 L.Ed. 1118 (1951); *Gyles v. State*, 901 P.2d 1143, 1148 (Alaska App. 1995).

**5.** *Hoffman*, 341 U.S. at 486–87, 71 S.Ct. at 818.

**6.** *See McKune v. Lile*, 536 U.S. 24, 36, 41, 122 S.Ct. 2017, 2026, 2029, 153 L.Ed.2d 47 (2002).

**7.** *Gyles*, 901 P.2d at 1148 (quoting *State v. Gonzalez*, 853 P.2d 526, 530 (Alaska 1993)).

**8.** *Gonzalez*, 853 P.2d at 530 (quoting *E.L.L. v. State*, 572 P.2d 786, 788 (Alaska 1977)).

office. He stated that he had testified against former interviewees using information that came out during the interviews. It thus appears that James had a legitimate fear of self-incrimination.

James's case is complicated because his appeal is a collateral attack on his conviction. The State appears to concede that defendants have a valid privilege not to discuss their offense so long as a direct appeal is pending. But the State maintains that the privilege should not extend to a collateral attack. James contends that if he is forced to discuss the facts about the incidents that led to his convictions, the State could use those statements against him if he were to ultimately win a retrial on any of his remaining post-conviction relief claims. He also points out that because he testified at his original criminal trial and denied his guilt, if he admitted committing the offenses during treatment, the State could use those statements to prosecute him for perjury. The State responds that James's chances of success on a post-conviction relief application are minimal, and therefore there is no basis to continue to extend James the privilege.

The State relies on *McCormick on Evidence*, which favors granting the privilege on a collateral appeal when "the facts [of the case] present a 'real and appreciable' danger of incrimination." [9] The treatise suggests that "[i]n the absence of some specific showing that collateral attack is likely to be successful, a conviction should be regarded as removing the risk of incrimination and consequently the protection of the privilege." [10] But James's case demonstrates the practical difficulties associated with this standard—it places the trial court in a position of reviewing its own decisions.

Judge Thompson originally dismissed James's application for post-conviction relief, after which James filed a timely appeal to this court. While that appeal was pending, the State filed its petition to revoke James's probation for failing to participate in the sex offender program. Judge Thompson presided over the probation revocation hearing as well. Thus, applying the standard suggested by the State would force Judge Thompson to reassess his earlier ruling on James's application for post-conviction relief and determine if the petition is likely to be successful—a determination he has already made. Requiring him to once again rule on the application while James's case awaits appeal is pointless because if he thought the application had any merit, he would not have dismissed it in the first place.

The State also points out that, if a defendant continues to have a privilege against self-incrimination during the pendency of a post-conviction relief application, a defendant could potentially avoid participating in a treatment program for a long period of time. The State postulates that a defendant could keep appeals going indefinitely, thereby avoiding sex offender treatment. We recognize that upholding James's exercise of his Fifth Amendment right might allow him to avoid sex offender treatment. But if James has a legitimate Fifth Amendment right, that right must trump practical difficulties raised by the legitimate exercise of that right.

The State finally rests its argument on cases from other jurisdictions that it alleges hold that "prisoners and probationers have no privilege against self-incrimination in regard to the requirement that the prisoner accept responsibility for criminal behavior during treatment." But our review of those cases shows that they are inapplicable to the circumstances of James's appeal. In the majority of the cases that the State cites, the defendant faced no future threat of self-incrimination and therefore did not have a privilege against self-incrimination.[11] We re-

---

**9.** 1 John W. Strong, *McCormick on Evidence*, § 120 at 465 (5th ed.1999).

**10.** *Id.*

**11.** *See, e.g., Russell v. Eaves*, 722 F.Supp. 558, 560–61 (E.D.Mo.1989) (holding that Missouri sex offender treatment does not violate Fifth Amendment because no future criminal proceeding identified); *State v. Gleason*, 154 Vt. 205, 576 A.2d 1246, 1250 (1990) (holding that defendant's plea of nolo contendre and protections of double jeopardy removed subsequent threat of incrimination and the protections of the privilege); *State v. Mace*, 154 Vt. 430, 578 A.2d 104, 107–08 (1990) (holding that Fifth Amendment did not protect defendant because defendant could not be prosecuted for a greater offense, and defen-

lied on similar cases in *Gyles v. State.*[12] Other cases that the State cites are inapplicable for a variety of reasons.[13]

One case cited by the State actually appears to support James's position. In *State v. Eccles,*[14] the Arizona Supreme Court struck down probation conditions that forced the defendant to "choose between incriminating himself and losing his probationary status by remaining silent."[15] The court only allowed a condition that required the defendant to "truthfully answer all questions that could not incriminate him in future criminal proceedings."[16] While the court did hold that the defendant could be forced to talk about offenses for which he had already been convicted, the defendant had to do so only to the extent he had lost the privilege to remain silent.[17] Based on the United States Supreme Court's decision in *Minnesota v. Murphy,*[18] the court held that the government could "compel answers to incriminating questions only if it offers the probationer use immunity."[19]

Another case the State cites, *State v. Mace,*[20] was later vacated by the United States District Court of Vermont.[21] Mace plead guilty to one count of lewd and lascivious conduct for his sexual conduct with his stepdaughter.[22] Mace was required, as a condition of his probation, to participate in sex offender treatment.[23] During treatment, Mace admitted that he had oral sex with his stepdaughter but denied having sexual intercourse with her.[24] Mace was informed by his probation officer that his refusal to admit sexual intercourse with his stepdaughter was interfering with the successful completion of his therapy and constituted a violation of his conditions of probation, which required him to complete a sex offender therapy program.[25] At a subsequent hearing, the trial court found that Mace violated his probation condition and revoked 60 days of his previously suspended sentence.[26]

Mace argued that requiring him to admit having sexual intercourse with his stepdaughter violated his Fifth Amendment rights.[27] He pointed out that he was admitting to a greater offense than the one for which he had been convicted.[28] He argued that the State might be able to prosecute him for this greater offense.[29] He also argued that since his stepdaughter testified that he

dant had not shown a "realistic threat of self-incrimination" regarding other prosecutions); *State v. Carrizales,* 191 Wis.2d 85, 528 N.W.2d 29, 30–32 (App.1995) (holding that Fifth Amendment did not protect the defendant because he had plead no contest, and in any case, the statements could only have been used for rehabilitative purposes).

12. *See Gyles,* 901 P.2d at 1149.

13. *See, e.g., Warren v. Richland County Circuit Court,* 223 F.3d 454, 457 (7th Cir.2000) (holding that sex counseling sessions did not violate defendant's plea agreement on due process grounds rather than Fifth Amendment grounds); *United States v. Ross,* 9 F.3d 1182, 1191 (7th Cir.1993), *rev'd on other grounds,* 40 F.3d 144 (7th Cir.1994) (holding that Fifth Amendment not implicated where probation requirement inquired into defendant's possession of prohibited firearms and condition did not force him to admit responsibility for any crimes); *People v. Ickler,* 877 P.2d 863, 866–67 (Colo.1994) (deciding case without ever reaching or discussing issue of Fifth Amendment privilege).

14. 179 Ariz. 226, 877 P.2d 799 (1994).

15. *Id.* at 801.

16. *Id.*

17. *Id.* Unfortunately, the court is silent on how a defendant may lose the protections of the Fifth Amendment under such circumstances.

18. 465 U.S. 420, 104 S.Ct. 1136, 79 L.Ed.2d 409 (1984).

19. *Eccles,* 877 P.2d at 802.

20. 154 Vt. 430, 578 A.2d 104, 107–08 (1990).

21. *Mace v. Amestoy,* 765 F.Supp. 847 (D.Vt. 1991).

22. *Id.* at 848.

23. *Id.*

24. *Id.*

25. *Id.*

26. *Id.* at 849.

27. *Id.*

28. *Mace,* 578 A.2d at 107–08.

29. *Id.*

had been having sexual intercourse with her for a substantial period of time, he still faced potential prosecution for sexual acts he committed against his stepdaughter during these different time periods.[30] The Supreme Court of Vermont, while accepting that this was "theoretically true," concluded that Mace had not shown "a realistic threat of self-incrimination." [31] The court upheld the revocation of Mace's probation.[32]

Mace filed a petition for a writ of habeas corpus, and the United States District Court in the District of Vermont reversed the Supreme Court of Vermont and vacated the revocation of Mace's probation.[33] The federal district court rejected the Vermont Supreme Court's conclusion that Mace had not shown that he faced a "realistic threat of self-incrimination." [34] The court reasoned that Mace "should not be left to the good intentions of the State when forced to incriminate himself or face incarceration." [35]. The court stated:

> Contrary to the state's position, the state has the burden of eliminating the threat of incrimination. If the state wishes to carry out rehabilitative goals in probation by compelling offenders to disclose their criminal conduct, it must grant them immunity from criminal prosecution.[36]

In *State v. Cate*,[37] the Vermont Supreme Court adopted the reasoning of the federal district court in *Mace*.[38] Cate was charged with sexual assault.[39] He testified at trial that the sexual intercourse was consensual.[40] He was convicted.[41] The trial court, as part of Cate's sentence, imposed a condition of

probation requiring Cate to admit his guilt as part of sex offender therapy.[42] The court required Cate to sign an acknowledgment of responsibility for sexually assaulting the victim.[43] Cate argued that signing the acknowledgment would violate his rights against self-incrimination because it would subject him to a potential prosecution for perjury.[44]

The Vermont Supreme Court, relying on the district court's decision in *Mace*, concluded that Cate had a legitimate Fifth Amendment claim and that the State could not require him to sign the acknowledgment of responsibility for the sexual assault to avoid revocation of his probation.[45] However, the court went further than the district court in protecting defendants. Rather than relying on a prosecutorial grant of immunity, the court extended judicial use immunity.[46] The court stated:

> Accordingly, in situations such as this, where the prosecutor has failed to eliminate the threat of future prosecution, we hold that the proper remedy for protecting a probationer's privilege against self-incrimination is a grant of judicial use immunity that makes any statements required for successful completion of rehabilitative probation inadmissible against a probationer at a subsequent criminal proceeding.[47]

The court concluded that the trial court

> may reimpose the challenged probation condition, but only if it first assures defendant on the record that statements required for successful completion of probation, and their fruits, will not be admissible against him at any subsequent criminal

30. *Id.*

31. *Id.* at 108.

32. *Id.*

33. *Amestoy,* 765 F.Supp. at 848.

34. *Id.* at 851–52.

35. *Id.* at 852.

36. *Id.* at 851–52.

37. 165 Vt. 404, 683 A.2d 1010 (1996).

38. *Id.* at 1018.

39. *Id.* at 1013.

40. *Id.*

41. *Id.* at 1014.

42. *Id.* at 1014, 1018.

43. *Id.* at 1018–19.

44. *Id.* at 1018.

45. *Id.*

46. *Id.* at 1019.

47. *Id.*

proceeding. Absent such assurance, the State may not seek, nor the court impose, a probation condition requiring defendant to admit culpability for the conduct of which he stands convicted.[48]

Similarly, in *State v. Imlay*,[49] the Montana Supreme Court upheld a defendant's Fifth Amendment rights in a case factually similar to James's. Imlay was rejected from a number of sex offender treatment programs after he repeatedly denied that he had committed a sexual offense.[50] No outpatient sex therapy program in the state would accept him because he denied that he was guilty of sexual misconduct.[51] As a result of Imlay's failure to complete a sex therapy program, as dictated by his conditions of probation, the trial court revoked his probation and imposed the remainder of his 5–year suspended sentence.[52] Imlay appealed the court's order revoking his probation.

The Supreme Court of Montana concluded that requiring Imlay to admit his guilt to avoid revocation of his probation violated his rights under the Fifth Amendment.[53] The court pointed out that Imlay "still had the right to challenge his conviction, based on newly discovered evidence, or by collateral attack." [54] The court also pointed out that because Imlay had testified in his own defense at trial and denied his guilt, he also faced prosecution for perjury:

> In addition, by admitting guilt in this case, the defendant would have to abandon his right guaranteed by the Fifth Amendment, not only as to the crime for which he has been convicted, but also to the crime of perjury. He testified in his own defense during his trial and denied committing the offense for which he was charged.
>
> Under the circumstances, and absent any grant of immunity, we believe that the better reasoned decisions are those decisions which protect the defendant's consti-

tutional right against self-incrimination . . . [55]

We agree with these courts that defendants in James's position face a realistic threat of self-incrimination sufficient to justify the protections of the Fifth Amendment. Like the defendants in *Cate* and *Imlay*, James testified at his trial that he did not commit the offenses for which he was convicted. Any statement that James made during therapy admitting to the offenses could be used by the State to prosecute him for perjury. Therefore, James's claim that he faced a realistic threat of self-incrimination is valid. In addition, James still had an application for post-conviction relief pending. If James was successful in that application, he could have obtained a new trial. Any statements James made, particularly statements admitting responsibility for the offenses, could then be used against him. This supports James's position that he had a legitimate Fifth Amendment claim.

### Conclusion

We conclude that James asserted his Fifth Amendment rights and that he has valid reasons to fear that discussing the facts surrounding his former convictions would force him to incriminate himself. We accordingly conclude that James has a valid Fifth Amendment privilege not to be compelled to discuss the facts surrounding the charges for which he has been convicted, and his probation cannot be revoked for his failure to do so.

The judgment of the superior court is REVERSED.

48.  *Id.* at 1020.

49.  249 Mont. 82, 813 P.2d 979 (1991).

50.  *Id.* at 982.

51.  *Id.*

52.  *Id.*

53.  *Id.* at 985.

54.  *Id.*

55.  *Id.*