Phillip Paul WEIDNER and Drathman
& Weidner, A Professional
Corporation, Appellants,

v.

STATE of Alaska; Superior Court for
the State of Alaska, Third Judicial
District, Appellees.

No. A–420.

Court of Appeals of Alaska.

Nov. 25, 1988.

718

Phillip Paul Weidner, Drathman & Weidner, and William P. Bryson, Anchorage, for appellants.

Cynthia M. Hora, Asst. Atty. Gen., Office of Sp. Prosecutions and Appeals, Anchorage, and Grace Berg Schaible, Atty. Gen., Juneau, for appellees.

Before SINGLETON, J., COMPTON, Justice,* and GREENE, Superior Court Judge.*

OPINION

GREENE, Judge.

Attorney Phillip Paul Weidner was ordered to pay $4,650.00 [1] as sanctions for alleged violations of court orders during his trial defense of the defendant in *State v. Stumpf.* [2]

During the three-month trial in *State v. Stumpf,* there were numerous incidents which led the trial judge, J. Justin Ripley, to admonish or sanction Weidner for violating court orders. There were at least eight such incidents prior to the time that the court began imposing monetary sanctions.

The sanctions generally increased in amount as the trial continued. The first imposition of a sanction was under the authority of AS 09.50.010(5) for direct contempt. The remaining sanctions were imposed under Alaska Civil Rule 95(b). Weidner has appealed the sanctions; he challenges the jurisdiction of this court to hear this matter, alleges he received inadequate notice of the violations, contends that he was improperly denied a hearing and the right to counsel, and asserts that the trial court's actions improperly infringed on his client's constitutional rights.

EQUAL PROTECTION/JURISDICTION

Weidner first argues that requiring him to bring his appeal in this court, rather than directly to the Alaska Supreme Court, denies him equal protection of the law under both the United States and Alaska Constitutions. U.S. Const. amend. XIV, § 1; Alaska Const. art. I, § 1. This claim is based on the fact that attorneys who are sanctioned in civil cases appeal directly to the supreme court, while attorneys who are sanctioned in criminal cases must first appeal to this court. *Compare Stephenson v. Superior Court,* 697 P.2d 653 (Alaska 1985), *with Weidner v. Superior Court,* 715 P.2d 264 (Alaska App.1986). Equal protection analysis under Alaska law differs somewhat from the federal test. Therefore, Weidner's federal and state claims will be examined separately.

Under the federal standard, legislation which treats similarly situated people differently is only subjected to heightened scrutiny if it relies on suspect classifications or burdens rights deemed fundamental. *See Clements v. Fashing,* 457 U.S. 957, 962–73, 102 S.Ct. 2836, 2843–49, 73 L.Ed.2d 508 (1982). Where that is not the case, the classification need only bear a

---

* Sitting by assignment made pursuant to article IV, section 16 of the Alaska Constitution.

1. The sanctions were imposed as follows:

| July 28 | $100 & $400 |
| August 2 | $100 & $100 |
| August 16 | $100 |
| August 17 | $500 |
| August 24 | $100 |
| August 26 | $250 |
| September 6 | $500 |
| September 13 | $500 |
| September 14 | $500 |
| September 21 | $500 & $500 & $500 |

2. Stumpf's merit appeal was decided in *Stumpf v. State,* 749 P.2d 880 (Alaska App.1988). That opinion may be consulted for additional facts regarding this case.

rational relationship to a legitimate goal. *Id.* at 963, 102 S.Ct. at 2843–44.

The United States Supreme Court has never held the right to pursue a particular occupation a fundamental right for equal protection purposes under the United States Constitution. The Supreme Court has applied only the rational relationship test in resolving equal protection challenges to regulations on the legal profession. *See, e.g., Schware v. Board of Bar Examiners of New Mexico,* 353 U.S. 232, 239, 77 S.Ct. 752, 756, 1 L.Ed.2d 796 (1957). The federal courts also apply the rational relationship test in addressing equal protection challenges to regulations affecting other professions. *See Iacobucci v. City of Newport,* 785 F.2d 1354, 1355–57 (6th Cir. 1986), *rev'd on other grounds,* 479 U.S. 92, 107 S.Ct. 383, 93 L.Ed.2d 334 (1986); *Lowrie v. Goldenhersh,* 716 F.2d 401, 408–09 (7th Cir.1983); *Pollard v. Cockrell,* 578 F.2d 1002, 1012 (5th Cir.1978).

The Alaska legislature established the court of appeals in 1980 exclusively to hear criminal appeals. AS 22.07.020. The creation of the court of appeals served two purposes: (1) it ensured that the state court system had adequate resources to resolve the volume of appeals with which it is faced; and (2) it established an appellate court with an expertise and specialized body of knowledge in criminal matters which enables it to efficiently resolve criminal appeals. These are legitimate legislative purposes.

Requiring that an attorney sanctioned in criminal proceedings first present an appeal to the court of appeals is rationally related to these defined goals. The court of appeals has original jurisdiction to hear appeals from criminal proceedings. There is no appeal as of right from a criminal matter to the supreme court. AS 22.07.-020; AS 22.05.010(b). The court of appeals therefore has primary responsibility for resolving legal issues which arise in criminal proceedings. It reasonably follows that the court of appeals has developed familiarity with the normal course of criminal proceedings in this state. As the question of whether a given action merits sanction de-

pends on the specific facts of a particular case, a sanctioned attorney will likely benefit from the court of appeals' specialized knowledge of standard practice in criminal matters in courts of this state. Additionally, as the court of appeals has primary responsibility for establishing the controlling policies in criminal proceedings, it is rational to give this court primary responsibility for determining what practices are acceptable in those proceedings. Weidner has not established a violation of federal equal protection rights.

■ Weidner's claim under the state constitution fails for similar reasons. The Alaska Supreme Court has held that there is no fundamental right to pursue a specific occupation without hindrance. *See Hilbers v. Anchorage,* 611 P.2d 31, 40 (Alaska 1980); *Commercial Fisheries Entry Comm'n v. Apokedak,* 606 P.2d 1255, 1262 (Alaska 1980). In resolving equal protection challenges brought under the Alaska Constitution, our courts apply a single standard involving a comprehensive examination of the circumstances. The statute's purpose must be legitimate; the means chosen to attain that purpose must substantially further that purpose; and the state's interest in the method chosen must be balanced against the right infringed. *See Apokedak,* 606 P.2d at 1264; *State v. Erickson,* 574 P.2d 1, 12 (Alaska 1978). Under this standard, Weidner's state equal protection challenge also fails. The statutory purpose and the means to attain the purpose, as discussed above, are reasonable exercises of legislative authority. The fact that sanctions in criminal cases are reviewed as a matter of right by three members of the appellate bench instead of five does not require a different determination.

Under the system of appellate practice created by the legislature, the only difference between the procedures applicable to a civil-law practitioner who has been sanctioned and a criminal-law practitioner who has been sanctioned is the court of first review. The Alaska Supreme Court retains ultimate jurisdiction over matters of attorney admission and discipline. Any party

who contends that any decision of this court regarding sanctions violates some general policy of the supreme court may present that argument through a petition for hearing. The Alaska Supreme Court, with its authority to grant discretionary hearing, is able to ensure that the decisions of this court are consistent with its policies and that no decision of this court regarding sanctions interferes with its powers to regulate the practice of law and attorney conduct.

## ALLEGED INVALIDITY OF COURT ORDERS

 Weidner alleges that several of the sanctions imposed were improper because the underlying orders were invalid. He argues that obeying them would have entailed violating various of his client's constitutional rights. The validity of a court's order is not at issue in reviewing criminal contempt or sanctions under Civil Rule 95. Where a court has proper jurisdiction, its orders must be obeyed. A person may be punished for criminal contempt for violating a court's orders even if those orders are later found invalid. *See Maness v. Meyers*, 419 U.S. 449, 458–60, 95 S.Ct. 584, 590–92, 42 L.Ed.2d 574 (1975); *United States v. United Mine Workers of America*, 330 U.S. 258, 293–94, 67 S.Ct. 677, 695–96, 91 L.Ed. 884 (1947). This rule has particular application to orders issued during a trial. *See Maness v. Meyers*, 419 U.S. at 459, 95 S.Ct. at 591. The trial judge must have the power to ensure that the proceedings are orderly and progress towards a conclusion. While counsel is entitled to establish an appellate record, that right does not include the right to violate the court's orders. If a trial judge errs, counsel must look to the appellate courts for relief from the order; counsel may not disregard or disobey the court's orders. Weidner was not entitled to disobey the court's orders because he believed them incorrect.

## ADEQUACY OF THE NOTICE AND HEARING

Weidner contends that he should have been given a post-trial hearing at which to defend himself against the contempt charges and that he received inadequate notice of which orders he allegedly violated. Judge Ripley imposed sanctions for direct contempt and additional sanctions under Alaska Civil Rule 95(b). The analysis differs based on the authority for the sanction.

 No separate hearing is required where the sanction is imposed for actions constituting direct contempt committed in court in the trial judge's presence. *See Weaver v. Superior Court*, 572 P.2d 425, 429–30 (Alaska 1977); Alaska R.Civ.P. 90(a). On July 28, Judge Ripley specifically found Weidner in direct contempt and immediately imposed the penalty. Therefore, no hearing was required on that fine. Additionally, having reviewed the record, we find that notice was adequately given.

 The other sanctions imposed in this case were imposed under authority of Alaska Civil Rule 95(b). Alaska Civil Rule 95(b) provides:

> In addition to its authority under (a) of this rule and its power to punish for contempt, a court may, after reasonable notice and an opportunity to show cause to the contrary, and after hearing by the court, if requested, impose a fine not to exceed $500.00 against any attorney who practices before it for failure to comply with these rules or any rules promulgated by the supreme court.

The rule applies in criminal matters. *Weidner*, 715 P.2d at 265. Although Alaska Civil Rule 95(b) requires that a sanctioned attorney receive a hearing, the amount of notice, the amount of time for the attorney to prepare, and the extensiveness of the hearing required depend on the facts of the case. Where the facts are straightforward and there is no showing that a more extensive hearing is necessary to present other evidence, a brief hearing on short notice may satisfy Alaska Civil Rule 95(b) requirements. *Stephenson*, 697 P.2d at 655–57. The trial court has considerable discretion in determining the time of the hearing under Alaska Civil Rule 95(b).

 In this case, having reviewed the record, we conclude that the trial court did not abuse its discretion in requiring imme-

diate hearings on these matters. In the present case, all of the sanctions imposed were imposed for in-court violations of Judge Ripley's orders. In almost every case, the sanctions were imposed for Weidner's persisting in behavior which the court warned him was improper. In each instance in which sanctions were imposed, Judge Ripley explained why he was considering imposing sanctions and offered Weidner the opportunity to explain his actions. Most of the sanctions were imposed either for violations of the court's order to make prior application before questioning witnesses regarding prior bad acts or for questioning in prohibited areas. If Weidner had a good faith basis for his questions, or a valid reason for violating the court's restrictions, those justifications should have been presented at the time sanctions were proposed. There was, therefore, no need for a separate post-trial hearing.

 A review of each instance in which a sanction was imposed reveals that in almost all cases the trial court did not abuse its discretion in imposing sanctions and was not clearly erroneous in its findings. However, in our judgment, three incidents require further proceedings in the trial court.[3]

## JURY TRIAL

 Weidner argues that he was entitled to a jury trial prior to the imposition of any of these sanctions. Clearly, he was not entitled to a jury trial prior to the imposition of sanctions under Alaska Civil Rule 95(b). *See Weidner,* 715 P.2d at 268. This necessarily follows from the fact that imprisonment is not authorized as a penalty for Alaska Civil Rule 95(b) violations. While a jury trial is required when incarceration is a potential punishment for an allegedly contemptuous act, a simple hearing is adequate when there is no threat of imprisonment. *Wood v. Superior Court,* 690 P.2d 1225, 1233 (Alaska 1984), *overruled on other grounds in DeLisio v. Superior Court,* 740 P.2d 437, 439 (Alaska 1987); *Weaver v. Superior Court,* 572 P.2d 425, 431 (Alaska 1977); *Continental Insurance Cos. v. Bayless and Roberts, Inc.,* 548 P.2d 398, 407 (Alaska 1976); *Weidner,* 715 P.2d at 268–69.

 The analysis with respect to the single instance where Judge Ripley utilized his contempt powers differs from that applied to Civil Rule 95(b) situations. Whether a contemner is entitled to a jury trial turns on whether the purpose of the contempt proceeding is punitive (criminal) or merely coercive (remedial). *Continental,* 548 P.2d at 405. If the proceeding is merely coercive then no jury trial is required because the contemner, even if incarcerated, holds the key to the cell in his or her pocket. *E.L.L. v. State,* 572 P.2d 786, 789

---

**3.** On August 16, Judge Ripley imposed a $100 sanction for an alleged violation of his order requiring court approval before certain "bad acts" evidence was introduced. During the cross-examination of Dr. Probst, Weidner asked about the consistency of "heavy use of opium" with a finding in the autopsy of Mr. Yi, the victim. Weidner defended based on the fact that the order went only to witnesses and Yi was not a witness. The court's comments indicate its erroneous belief that the order was applicable beyond "witnesses." The state argues that the question violated Alaska Evidence Rule 404(a)(2)(i) and thus the sanction should be affirmed. However, it is not clear whether Judge Ripley would have imposed a sanction for violation of that provision rather than his order. Judge Ripley should consider that question in the first instance.

On August 24, the court imposed a $100 sanction for asking a witness if she had been known as "Crazy Annie." The state applied for sanctions based on a violation of the "bad acts" order and Weidner's defense, to the extent one was raised, addressed that issue. While the trial court found no violation of the "bad acts" order, the trial court imposed sanctions for "degrading" the witness in violation of the rule which requires that questions not harrass or intimidate witnesses. Given these facts, Weidner was not given reasonable notice of the alleged violation.

On September 13, the court imposed a $500 sanction for asking the witness Andreas, without prior permission of the court, about his possession of burglary tools. Weidner requested permission to review the record because he thought "that was a pending charge." In light of the fact that the court's order specifically excepted "the existence of criminal charges currently pending against a witness" from its application, it was error to deny Weidner an opportunity to check the record and prepare his defense to the sanction.

(Alaska 1977). *See Johansen v. State*, 491 P.2d 759, 764 (Alaska 1971). In contrast, if the purpose of the contempt proceeding is punitive (criminal) then the next step is to ask whether incarceration is a possible sanction. If the answer is yes, then a jury trial is required. *See Continental*, 548 P.2d at 405, 407. *See also DeLisio v. Superior Court*, 740 P.2d 437, 439 (Alaska 1987).[4]

■ On July 28, Judge Ripley found Weidner in direct contempt of his order to move on to other areas in cross-examining a witness, Trooper Olson, and imposed a fine of $100. Although Judge Ripley's comments illustrated a desire to deter future misconduct, the purpose of the sanction was clearly punitive.

Although the court was proceeding in criminal contempt, Weidner was not entitled to a jury trial. At the beginning of the hearing regarding the alleged contempt, the trial court specifically informed Weidner that "the issue [was] monetary sanctions and how much." Thus, there was no possibility of incarceration. *See Johansen*, 491 P.2d at 766 n. 27 (whether criminal penalties may be imposed should be made clear at the outset of a contempt proceeding). Under AS 09.50.020, contempt under AS 09.50.010(5) for disobedience of a lawful court order may be punishable by a fine of not more than $300 or by imprisonment of not more than six months only when a right or remedy of a party to an action or proceeding was defeated. In all other instances, such contempt is punishable by a fine not to exceed $100. Judge Ripley was obviously proceeding under the latter reme-dy. We conclude that the potential $100 fine in this case was not so heavy that Weidner was entitled to a jury trial. *Resek v. State*, 706 P.2d 288, 291–93 (Alaska 1985). We also conclude that Weidner was aware from the outset that potential fines would not be so large that a jury determination would be required. *See Wood*, 690 P.2d at 1232–33. Weidner was not subject to incarceration nor a fine in an excessive amount; he had no right to a jury trial for his direct contempt.

JUDICIAL CHALLENGE

■ Weidner argues that he should have been afforded a hearing before another judge on the question of sanctions. An individual facing imposition of sanctions such as these is not entitled to a change of judge as a matter of right. Where the totality of circumstances indicates that the judge is prejudiced against counsel, counsel has the right to challenge the judge for cause. *Weidner*, 715 P.2d at 269. Weidner has not established a basis for a cause challenge.

The imposition of sanctions is AFFIRMED, in part, and REMANDED, in part, to the superior court for further proceedings consistent with this opinion.

BRYNER, C.J., and COATS, J., not participating.

---

**4.** In *DeLisio*, the court stated: "While it is true that a jury trial may be required when considering a criminal contempt, incarceration, *per se*, does not make the contempt criminal. '[T]here is no right to a jury trial in a civil contempt proceeding when the sole purpose of the pro-ceeding is to compel the contemner to perform some act that he or she is capable of performing.'" 740 P.2d at 439 (citations omitted).