Chris STADLER, Appellant,

v.

STATE of Alaska, Appellee.

No. 3702.

Supreme Court of Alaska.

June 14, 1991.

John C. McCarron, Ashburn and Mason, Anchorage, for appellant.

David Mannheimer and Cynthia Hora, Asst. Attys. Gen., Office of Sp. Prosecution and Appeals, Anchorage, Douglas B. Baily, Atty. Gen., Juneau, for appellee.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

OPINION

RABINOWITZ, Chief Justice.

INTRODUCTION

Christopher Stadler, a jury panelist, was held in contempt for leaving the courthouse during a recess and failing to return. He was sentenced to serve ninety hours of jury service. We reverse.

FACTS AND PROCEEDINGS

On August 1, 1989, nineteen-year-old Christopher Stadler was on the jury panel in a civil trial. Before the panel was sworn in, the superior court announced a short recess. The court told the jurors they should remain in the lobby adjacent to the courtroom. During the recess, Stadler left the courthouse and did not return. Two days later, Stadler was arrested.

At his arraignment, Stadler appeared without counsel. After the superior court ascertained that Stadler had left the courthouse premises, it asked for an explanation. Stadler explained, "I—I just—I needed a job real bad and I didn't think that I could stay here for a long continued trial because I ... I didn't think it was really that serious that if I left that I'd be in that much trouble." When the court indicated that it might impose ninety hours of jury service on Stadler, the estimated time of service for the jury on which he was originally impanelled, it asked Stadler if he had a response. He said, "No." Although the superior court initially ordered Stadler to serve the ninety hours of jury service, its written order stated that Stadler must report for jury duty the first Monday of each month and shall "continue to report for jury duty until he has been either waiting to be selected or has been selected and served a total of 90 hours of jury service."[1] Stadler appeals.

DISCUSSION [2]

Stadler and the state disagree about the nature of his contempt. Stadler claims

---

1. The superior court's written order modified its oral order, which had originally required Stadler to return for jury service until he *served* ninety hours of jury service. In its oral order, the court warned that "this may take up to a year because there aren't a lot of jury trials...."

2. All questions involved in this appeal are legal questions which this court can decide *de novo*. On questions of law, we must "adopt the rule of law that is most persuasive in light of precedent, reason, and policy." *Guin v. Ha*, 591 P.2d 1281, 1284 n. 6 (Alaska 1979).

that the superior court should have found him in criminal contempt; the state argues that the superior court correctly held him in civil contempt. In general, under criminal contempt, the contemnor is afforded greater procedural protection and the court's discretion is more circumscribed than under civil contempt.

We hold that Stadler committed criminal contempt and that the superior court erred by invoking its inherent power to punish Stadler for contempt without giving adequate notice that it was doing so. Although we hold that Stadler's contempt was indirect, we reject his claim that he is entitled to a jury trial. Because Stadler will receive notice and a hearing on remand, we need not reach Stadler's further allegations of procedural error.

The Nature of the Contempt

■ The distinction between civil and criminal contempt is well-established in the case law.[3] We reviewed the history of the criminal/civil contempt distinction in *Johansen v. State*, 491 P.2d 759, 763–64 (Alaska 1971). There we adopted the test set out in *Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 441, 31 S.Ct. 492, 498, 55 L.Ed. 797 (1911):

> It is not the fact of punishment, but rather its character and purpose, that often serve to distinguish between the two classes of cases. If it is for civil contempt the punishment is remedial, and for the benefit of the complainant. But if it is for criminal contempt the sentence is punitive, to vindicate the authority of the court.

*Johansen*, 491 P.2d at 763. *See also L.A.M. v. State*, 547 P.2d 827, 831 (Alaska 1976) ("The distinction between criminal and civil contempt is generally phrased in terms of whether the character and purpose of the contempt is 'remedial' or 'punitive.'") Yet, we also acknowledged that "[t]his remedial-punitive distinction is not perfectly sharp." *Johansen*, 491 P.2d at 764.

The superior court treated Stadler's contempt as criminal contempt. Imposing ninety hours of jury service was punitive; it responded to Stadler's past actions and was not conditioned on any future action on his part.[4]

Other factors also indicate the criminal nature of Stadler's contempt. There was no third party. In *Johansen*, we implicitly recognized that a civil contempt proceeding usually seeks to coerce compliance with a court order for the benefit of a third party. *Johansen*, 491 P.2d at 764 n. 22 & 765. Moreover, a civil contempt defendant usually carries the keys to his or her imprisonment (or punishment) in his or her own pocket. *Johansen*, 491 P.2d at 765. *See Diggs v. Diggs*, 663 P.2d 950, 951 (Alaska 1983) (civil contempt proceeding in nonpayment of support cases must afford "a continuous opportunity to the defendant to purge the contempt"); *E.L.L. v. State*, 572 P.2d 786, 789 (Alaska 1977). Here, no purge clause existed; Stadler could not terminate his punishment.

The state contends that the contempt was civil, equating the ninety hours of jury service to restitution. We reject this argument. The cases cited by the state do allow courts to order restitutionary payments by the contemnor to a third party in civil contempt cases. "The purpose of civil

---

**3.** Alaska Statute 09.50.010, which designates acts or omissions which constitute contempt, does not make explicit whether violation of its provisions are criminal or civil contempt. This court has noted,

> [E]ven the location of the contempt laws in the state statutes permits ambiguous inferences. The contempt provisions are found in AS 09.50.010–09.50.060, part of the Code of Civil Procedure, but these sections are specifically made applicable to "criminal actions" by AS 12.80.010, part of the Code of Criminal Procedure.

*Johansen v. State*, 491 P.2d 759, 762 n. 1 (Alaska 1971).

**4.** *See Weaver v. Superior Court*, 572 P.2d 425, 428 (Alaska 1977) ("[T]he contempt sanction imposed on appellant was clearly criminal in nature, since the $100 fine was imposed for past actions, was not conditioned on any further action by appellant and could not be avoided by any subsequent action on Weaver's part."); *DeLisio v. Superior Court*, 740 P.2d 437, 439 (Alaska 1987); *Pharr v. Fairbanks North Star Borough*, 638 P.2d 666, 669 (Alaska 1981); *Gwynn v. Gwynn*, 530 P.2d 1311, 1312–13 (Alaska 1975).

contempt is 'to enforce compliance with an order of the court or to compensate for losses or damages sustained by reason of noncompliance.'" *Yanish v. Barber*, 232 F.2d 939, 945 (9th Cir.1956) (quoting *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191, 69 S.Ct. 497, 499, 93 L.Ed. 599 (1949)), *overruled on other grounds*, *Donovan v. Burlington Northern, Inc.*, 781 F.2d 680, 682 (9th Cir.1986). *See also Portland Feminist Women's Health Center v. Advocates for Life, Inc.*, 877 F.2d 787, 790 (9th Cir.1989). In each of these cases, however, the costs imposed were discrete and identifiable and related directly to the contemnor's disobedience of a court order. Moreover, the contemnor could have purged the contempt at any time, thereby reducing the amount of restitution he or she would eventually have to pay.

Here, importantly, Stadler's obligation to the state for jury service had never been excused or deferred, pursuant to AS 09.20.030 (exemption from jury service) or AS 09.20.035 (deferral of jury service). The superior court could not have been compensating the community for a still existing obligation. Nor did the superior court indicate that it was seeking to compensate the state for its loss. Rather, it imposed a "form of community service" for a "direct violation of a court order."

In sum, Stadler's contempt was clearly criminal in nature, not civil.

### The Process That Was Due

■ Stadler, citing *Continental Insurance Companies v. Bayless & Roberts, Inc.*, 548 P.2d 398, 405 (Alaska 1976), contends that he is entitled to "all procedural safeguards which are consistent with the interest of the court in upholding its efficiency, dignity and authority." The state argues that Stadler was not entitled to procedural safeguards because his contempt was a "direct contempt," i.e. one that occurs in the presence of the court. *See Taylor v. District Court*, 434 P.2d 679, 681

(Alaska 1967). We conclude that Stadler's act here constituted indirect contempt.

In *Taylor*, both an attorney and his client failed to appear in the district court at the time set for trial. The district court issued an order to show cause. The attorney appeared and gave his explanation, which the court found insufficient, and fined him $100. The attorney appealed, arguing that for an indirect or constructive contempt, Civil Rule 90(b) required that the contempt proceeding commence by means of an affidavit, which had not been done. Therefore, he argued, the district court did not have jurisdiction to render its judgment. In *Taylor*, we held,

> The failure of an attorney to appear in court when he is supposed to appear may, in one sense, be classified as a direct contempt in that the attorney's offensive conduct—his absence—occurs in the presence of the court. That is what appellee argues. But a mere failure to appear does not, in and of itself, amount to a contempt of court. In order for there to be contempt it must appear that there has been a willful disregard or disobedience of the authority or orders of the court. Whether such willfulness exists is something the court cannot be aware of from its own observations in the courtroom and without inquiry from other sources. Without such inquiry the court cannot ascertain the operational facts from which an inference of willful disobedience or disregard of the court's authority or orders can be drawn. An explanation for the attorney's absence is not apparent and the facts, which are not evident merely from the attorney's absence, may be such as to excuse the apparent contempt. We hold, therefore, in line with the majority view in this country, that appellant's failure to appear in court at the time specified by order of the court, may amount to an indirect, but not a direct contempt of court.

*Id.* at 681 (footnotes omitted).[5]

Under *Taylor*, Stadler's contempt was an indirect contempt. The superior court

---

5. The state concedes in its brief that the contempt in *Lastufka v. State*, 662 P.2d 991, 993 (Alaska App.1983), was indirect. There, similar to the case at bar, a juror selected for criminal

could not ascertain the willfulness of Stadler's violation from its own observation. This was made explicit when the court asked Stadler, "[a]nd at a recess in which there was a direct order of the Court for you to remain in the lobby, you left the premises; did you not?" and further asked, "[d]o you have any explanation for your conduct?" As this colloquy illustrates, Stadler's action could have lacked the requisite willfulness required for direct contempt.

■ Stadler concludes that he was entitled to a variety of specific procedural safeguards. Specifically, Stadler argues that he was entitled to a jury trial. The potential punishment, not the sentence or fine actually imposed, determines whether Stadler was entitled to a trial by jury. *Wood v. Superior Court*, 690 P.2d 1225, 1233 (Alaska 1984), *overruled on other grounds, DeLisio v. Superior Court*, 740 P.2d 437, 439 (Alaska 1987). We hold, however, that Stadler was not threatened with incarceration and consequently was not entitled to a jury trial. The statutory provision which covers Stadler's contempt indicates that he was not subject to imprisonment. Alaska Statute 09.50.020 states,

> **Penalty.** A person who is guilty of contempt is punishable by fine of not more than $300 or by imprisonment for not more than six months. However, when the contempt is one mentioned in AS 09.50.010(3)–(12), or in an action before a magistrate, the person is punishable by a fine of not more than $100 unless it appears that a right or remedy of a party to an action or proceeding was defeated or prejudiced by the contempt, in which case the penalty shall be as prescribed

for contempts described in AS 09.50.-010(1) and (2).

Stadler's acts fell directly under AS 09.50.-010(11):

> **Acts or omissions constituting contempt.** The following acts or omissions in respect to a court of justice or court proceedings are contempts of the authority of the court:
>
> .    .    .    .    .
>
> (11) when summoned as a juror in a court, neglecting to attend or serve.... [6]

Under the statute, Stadler was not entitled to a jury trial. "Ordinarily the contemnor is entitled to a jury trial only when incarceration is a possible sanction for his misbehavior." *Weaver v. Superior Court*, 572 P.2d 425, 431 (Alaska 1977). The United States Supreme Court has recognized that "certain specific constitutional protections, such as the right to trial by jury, are not applicable to those criminal contempts that can be classified as petty offenses, as is true of other petty crimes as well." *Hicks v. Feiock*, 485 U.S. 624, 633 n. 5, 108 S.Ct. 1423, 1430 n. 5, 99 L.Ed.2d 721 (1988).[7]

Finally, Stadler objects that he was not informed of the potential punishment he faced and that he did not receive an adequate hearing. Stadler further argues that the court erred by failing to advise him that he had a right to counsel. Because we remand for further proceedings, these issues are moot.[8]

The Punishment

■ Stadler argues that his contempt specifically fell within AS 09.50.010(11). Therefore, he contends that his punishment

---

trial did not return to court on the second day of trial because he secured an out-of-town job.

**6.** The state agrees that Stadler's conduct "did not prejudice or defeat any right or remedy of the parties.... Thus, the maximum penalty under AS 9.50.020 was a $100 fine."

**7.** Alaska Statute 09.50.030, while addressing the right to a jury trial in an indirect contempt proceeding, does not aid Stadler:

> **Jury Trial.** A person who is charged with contempt of court not committed in the pres-

ence of the court, where the act or thing so charged as a contempt is of such nature as to constitute also a criminal offense under a statute of the United States or a law of this state, has a right to a jury trial.

Stadler's action was not a criminal offense under a law of this state or under a federal statute.

**8.** We note, however, that for a case of criminal contempt where the punishment is limited to the statutory $100 fine, adequate notice is provided when the order to show cause specifies the alleged contemptuous act. *Taylor*, 434 P.2d at 679.

is statutorily limited to $100 under AS 09.-50.020. The state, citing *Continental Insurance Co.*, 548 P.2d at 410–11, argues that AS 09.50.020 does not "delimit the full extent of the superior court's power to punish contemnors[.]" Both arguments have merit. However, given the facts in the case at bar, we conclude that the superior court erred in invoking its inherent powers to punish contemnors, because it did not give notice that it was doing so or inform Stadler that he was subject to a penalty greater than the statutory limit.

We find persuasive the court of appeals' decision in *Lastufka v. State*, 662 P.2d 991 (Alaska App.1983). The defendant in *Lastufka*, after being sworn in as a juror, did not appear for jury duty because he had to go out of town due to his job. He was ordered to show cause why he should not be held in contempt. He admitted his failure to appear was willful and was sentenced to serve 120 hours in jail. The court of appeals reversed the sentence and held that the statutory crime with which he was charged carries a maximum sentence of $100. The court of appeals assumed, without deciding, that the court has inherent powers to punish contempt. However, it held that Lastufka was "never given any notice that the court was invoking its inherent powers or that he was subject to any penalty other than a hundred dollar fine." *Id.* at 993. Given that Lastufka was not given notice of the specific charge against

him, and given that his action fell squarely within the statute, he was entitled to believe that he was subject only to the statutory fine of $100.[9]

The state contends that the statutory penalty is "clearly inadequate to accomplish the tasks of ensuring the efficient operation of the superior court and upholding the authority of that court." We note that the fine was set by the legislature, and it clearly has the prerogative to set the fine at this level. Moreover, the statute does not limit the court's inherent power to punish contempt when notice is given. *Continental Insurance Co.*, 548 P.2d at 410–11.[10]

■ Additionally, Stadler's obligation for jury service has never terminated. He has never been exempted pursuant to AS 09.-20.030; he is still legally obligated to serve. The court could have imposed the $100 fine for contempt, and then informed Stadler that his legal obligation to serve still existed. Instead, the superior court used a specific amount of jury service as a punishment for the contempt. This sentence exceeded the court's statutory authority, given that insufficient notice existed to invoke its inherent authority.[11]

## CONCLUSION

We vacate the punishment imposed and remand to the superior court for further proceedings consistent with this opinion.[12]

**9.** The state tries unsuccessfully to limit *Lastufka*'s application. The state says Lastufka was proceeded against criminally and not via civil contempt. Stadler, however, also was proceeded against criminally. The state also notes that Lastufka committed indirect contempt. Yet, Stadler did also. Finally, the state argues that the court of appeals awarded the wrong remedy. Whatever the merits of this argument for *Lastufka*, no plea bargaining existed in Stadler's case. We can order a unilateral reduction of the sentence on appeal. *See* Appellate Rule 215(a)(2); Criminal Rule 35(a).

**10.** In addition, we note that the statutory penalty can be applied repeatedly, every time a juror fails to fulfill his or her jury duty obligation. The court had the discretion to fine Stadler $100 and require him to appear for jury duty the next day. If he again failed to appear, the fine could be reimposed, and again he could be ordered to appear. The culmination of the contempt fines

would soon cease to be *de minimis*, if in fact it was ever *de minimis* here.

**11.** We also note disapproval with the sentence in the case at bar. A jury trial is an important constitutional right for a party in a civil action, *State v. Kaatz*, 572 P.2d 775, 779 (Alaska 1977), or a defendant in a criminal action, *Wood v. Superior Court*, 690 P.2d 1225, 1233 n. 12 (Alaska 1984), *overruled on other grounds, DeLisio*, 740 P.2d at 439. To require jury service as a punishment not only threatens the right for a party entitled thereto, but it also cheapens a civic duty of the highest magnitude.

**12.** After further proceedings the court may either impose a sentence not to exceed $100 or give proper notice that it intends to invoke its inherent powers. However, the superior court may not impose a more severe sentence than originally imposed. *Shagloak v. State*, 597 P.2d 142, 145 (Alaska 1979). Given our disapproval

The sentence imposed is VACATED and the case is REMANDED for further proceedings consistent with this opinion.

of the ninety hours of jury service as a sentence in this case, and given that the court called this punishment "community service," the court on remand may not impose a more severe sentence than ninety hours of "community service."