**CHILKOOT LUMBER CO., INC., Appellant,**

v.

**RAINBOW GLACIER SEAFOODS, INC., Appellee.**

No. S–12921.

Supreme Court of Alaska.

June 10, 2011.

Fred W. Triem, Petersburg, for Appellant.

John M. Rice, Law Offices of John M. Rice, P.C., Juneau, for Appellee.

Before: FABE, Chief Justice, EASTAUGH, CARPENETI, WINFREE, and CHRISTEN, Justices.

*OPINION*

CARPENETI, Justice.

## I. INTRODUCTION

A commercial landlord and its tenant resolved their dispute and entered the terms of the settlement on the record, but the tenant did not perform the settlement agreement. After the time for performance by the tenant had expired, the landlord moved to enforce the settlement agreement. The superior court denied the motion to enforce. The landlord moved for reconsideration and the court ordered oral argument on the motion. At oral argument, the parties tentatively agreed to reinstate the settlement agreement, with new deadlines for performance. But when they could not agree on new deadlines, the superior court entered an order that enforced the settlement agreement as modified by the tenant's proposed deadlines. The landlord violated the order, and the superior court ordered it to pay $1,000 per day of violation to the tenant. The landlord appeals.

Because it was error to deny the original motion to enforce, we reverse the superior court's subsequent order enforcing the modified settlement agreement. Because we reverse the court's order, we also reverse the civil contempt sanctions stemming from violation of the order.

## II. FACTS AND PROCEEDINGS

### A. Facts

In 1996 a group of commercial fishers began a fish-processing business called Rainbow Glacier Seafood (Rainbow). Rainbow entered into a contract with Chilkoot Lumber Company (Chilkoot) to lease land and a dock from Chilkoot on which to put Rainbow's fish-processing equipment. In 1998 Rainbow failed to pay the full lease amount to Chilkoot. The parties dispute what happened next. Chilkoot alleges that Rainbow abandoned the equipment. Rainbow alleges that Chilkoot locked Rainbow out of the premises and converted Rainbow's equipment to Chilkoot's own use.

### B. Proceedings

In April 2003 Chilkoot sued Rainbow for unpaid rent, liquidated damages, and the cost of storage of Rainbow's fish-processing equipment. Chilkoot also asked for a lien on the equipment to satisfy the rent debt, liquidated damages, and storage fees.

In April 2004 Chilkoot moved for summary judgment. By affidavit, Chilkoot alleged that Rainbow had abandoned its equipment. Rainbow responded that Chilkoot prevented Rainbow from using or removing the equipment. The parties also disagreed about whether the equipment could be removed without damaging Chilkoot's buildings. In July 2004, at oral argument, Superior Court Judge Michael A. Thompson indicated that he would deny Chilkoot's motion. The transcript of that hearing is not in the record, but the log notes read: "Summary judgment motion still floating around. *[I]t will be denied.*" (Emphasis in original.) The court then denied a request for injunction and appears to have asked if there was anything further:

Rice [attorney for Rainbow]—nothing further.

Triem [attorney for Chilkoot]—a written order on S.J.

Ct.—No.

The superior court did not issue a written ruling.

In April 2005 the parties[1] held a settlement conference before District Court Judge Keith B. Levy in Juneau. They reached an agreement and entered its terms on the record. They agreed Chilkoot would pay Rainbow $12,500 by June 1, 2005, if Rainbow substantially removed its equipment from the premises by May 15, 2005. If Rainbow failed to remove the equipment by May 15, it would forfeit any remaining equipment to Chilkoot, and Chilkoot would not have to pay Rainbow anything. Judge Levy then orally confirmed with the parties that they understood the terms of the agreement, and that they intended the agreement to be a full and final binding settlement.

---

1. The State of Alaska also participated in the settlement conference as it had an interest in an unpaid start-up loan it made to Rainbow in 1998. Its participation is not relevant to this appeal.

The parties then agreed that the settlement agreement should be reduced to writing and made an order of the superior court. About a week later, Chilkoot prepared a written agreement and order, signed the agreement, and sent it to Rainbow for signature. But Rainbow did not sign the agreement and, because Rainbow had not signed, Judge Thompson did not sign the order. Rainbow did not remove the equipment.

In January 2006 Chilkoot moved to enforce the settlement agreement. Judge Thompson denied Chilkoot's motion on the grounds that Rainbow had not "signed or otherwise evidenced [its] agreement." Chilkoot filed a motion for reconsideration. Judge Thompson then ordered oral argument.

Oral argument took place in June 2006, but the parties did not argue the enforceability of the settlement agreement. At the outset of the hearing, Rainbow explained to the court that the parties had tentatively agreed that the original settlement agreement was still enforceable but decided to change the deadlines for removal of equipment and payment. Rainbow said that Chilkoot had agreed to a removal deadline of May 2007. The court asked why the time frame for removal was so much longer than in the original agreement. Chilkoot explained that removal in the next few months would interfere with the fish-processing season. The court suggested removal between October 2006 and May 2007, and it appeared the attorneys for the parties would agree to that.

But then Rainbow's representative broke into the discussion and said Rainbow would prefer to be able to lease out the equipment rather than let Chilkoot use it without charge for the upcoming season. Rainbow suggested 30 days for removal, as provided for in the original agreement. Chilkoot objected, and explained that it had negotiated for the May removal date in the original agreement in order to prevent removal of the equipment during the fishing season. Chilkoot explained at length that a 30-day removal

deadline would be inconvenient. The court indicated that it understood the problem. Throughout the hearing, Chilkoot maintained that it would accept only an October—May window for removing the equipment. It therefore objected to a deadline for removal that would fall during the approaching summer fishing season.

The court then ruled. First, it noted that the parties agreed to the substance of the agreement, but not to the dates for removal. The court then concluded that it needed to "reset" the dates. Finally, the court ordered enforcement of the agreement with a 45-day deadline for removal.

A few weeks later, Rainbow informed the court that Chilkoot was not complying with the agreement and was hindering Rainbow's attempts to remove its equipment. Rainbow asked the court for an order enforcing the agreement, finding Chilkoot in contempt, and awarding Rainbow a sanction of $1,000 for each day of Chilkoot's contempt. The superior court granted the motion, with sanctions to begin accruing three days after entry of the order.

The court held a hearing on the question of sanctions in May 2007. In ordering sanctions, the court noted that it intended to "provide[ ] liquidated damages sufficient to either stop the interference or make it painless to Rainbow if Chilkoot elects to continue ignoring the order." The court made clear that the $1,000 per day was not based on any actual damages suffered by Rainbow. The court ultimately found that Chilkoot was liable for 69 days of violation, totaling $69,000 in sanctions. It also awarded Chilkoot the equipment Rainbow failed to remove. Chilkoot appeals.

## III. STANDARD OF REVIEW

 In the absence of factual disputes, we review questions of contract formation and interpretation de novo.[2] We interpret settlement agreements as contracts.[3] If we

---

**2.** *See Copper River Sch. Dist. v. Traw,* 9 P.3d 280, 283 (Alaska 2000). When the question of contract formation hinges on factual disputes, we review a superior court's factual findings under

the clearly erroneous standard. *See Munn v. Thornton,* 956 P.2d 1213, 1217–18 (Alaska 1998).

**3.** *See Smith v. Cleary,* 24 P.3d 1245, 1247 (Alaska 2001) ("The settlement agreement's scope and

agree, on de novo review, that a valid settlement agreement exists, the superior court has no discretion[4] to decline to enforce that agreement.[5] We review such a decision de novo.[6]

We review civil contempt judgments for abuse of discretion.[7]

## IV. DISCUSSION

### A. It Was Error To Deny Chilkoot's Motion To Enforce.

■ Chilkoot argues that the 2005 oral settlement agreement reached on the record was an enforceable contract with Rainbow, and that the superior court erred in failing to enforce it. Rainbow responds that Chilkoot agreed to reset the dates of the original settlement agreement, and that therefore Chilkoot abandoned its argument that the

court should enforce the original settlement agreement. We agree with Chilkoot that the 2005 settlement agreement was enforceable.

Civil Rule 81(f) states: "Stipulations between parties or their attorneys will be recognized only when made in open court, or when made in writing and filed with the clerk."[8] We have held that oral settlement agreements made on the record are binding on the parties.[9] In this case, both parties clearly stated on the record that they understood and intended to be bound by the agreement. Under Civil Rule 81(f) and our case law, therefore, this agreement was enforceable. We are not convinced that reducing the agreement to writing was a bargained-for condition that prevented contract formation. The parties placed a complete and enforceable settlement agreement on the record; their agreement to subsequently memorialize

---

effect raise questions of contract law that we review de novo.").

4. In *Rice v. Denley*, we explained that "the superior court 'has discretion to deny the motion [to enter judgment on a settlement agreement reached on the record] *if the court determines that material issues of fact exist as to the existence of the settlement agreement or to a material term of the settlement.'*" 944 P.2d 497, 499 (Alaska 1997) (emphasis added). The word "discretion" has been used imprecisely in subsequent cases involving settlement enforcement: We have used "discretion" where we simply meant "authority." *See Brooks Range Exploration Co. v. Gordon*, 46 P.3d 942, 944 (Alaska 2002); *Dickerson v. Williams*, 956 P.2d 458, 462 (Alaska 1998). This imprecision was propagated further in *Worland v. Worland*, 193 P.3d 735, 738 (Alaska 2008); *Mullins v. Oates*, 179 P.3d 930, 935 (Alaska 2008); and *Ford v. Ford*, 68 P.3d 1258, 1263 (Alaska 2003).

Thus, a close review of our precedent makes clear that in the context of settlement enforcement, the word "discretion" refers to the superior court's authority to choose between methods of enforcement, such as whether "to compel [a party] to execute the settlement agreement, or alternatively direct the clerk of court to sign the agreement on [the party]'s behalf." *Pavek v. Curran*, 754 P.2d 1125, 1127 (Alaska 1988). But the superior court does not have broad power to decide whether to enforce a conclusively valid agreement.

5. *See, e.g., Pavek*, 754 P.2d at 1127 ("[W]e hold that the superior court erred in refusing to grant Pavek's motion for entry of judgment when no material issues of fact existed as to the settlement's terms or validity."); *see also Smith*, 24 P.3d at 1249 (analogizing enforcement of settle-

ment agreement to contract law and giving effect to parties' reasonable expectations).

6. *Colton v. Colton*, 244 P.3d 1121, 1127 (Alaska 2010) ("We review the decision to summarily enforce a contested agreement de novo and will affirm only if we conclude that there is no issue of material fact and the agreement is valid as a matter of law.").

7. *See Matanuska Elec. Ass'n v. Rewire the Bd.*, 36 P.3d 685, 690 n. 4 (Alaska 2001) (quoting *Czaja v. Czaja*, 208 W.Va. 62, 537 S.E.2d 908, 917 (2000)); *Doyle v. Doyle*, 815 P.2d 366, 371 (Alaska 1991) (holding use of civil contempt not abuse of discretion). We conclude that the contempt was civil, rather than criminal, in Part IV.B, *infra*.

8. Alaska R. Civ. P. 81(f).

9. *See Crane v. Crane*, 986 P.2d 881, 885 (Alaska 1999) ("When a stipulation is admitted by both parties or their attorneys in open court and there is no dispute as to the material terms of the settlement, the stipulation is enforceable between the parties absent fraud, duress, or concealment...."); *Murphy v. Murphy*, 812 P.2d 960, 965 (Alaska 1991) (upholding superior court's refusal to set aside oral divorce property settlement made on the record after settlement conference). And Alaska's Statute of Frauds, which provides that certain agreements are not enforceable against a party unless the party agreed in writing, makes an exception for agreements admitted to in court proceedings. AS 09.25.010, AS 09.25.020(4). The parties do not argue that the agreement in this case falls under the Statute of Frauds.

its terms in a written document does not preclude enforcement of the oral contract. Thus, it was error for the superior court to hold that the agreement was unenforceable due to the absence of Rainbow's signature on the written settlement agreement.

■ Furthermore, we do not agree with Rainbow that Chilkoot abandoned the contract by negotiating for different removal dates at oral argument on reconsideration. It is true that a party can abrogate an existing contract by accepting a new contract in its place.[10] But Chilkoot and Rainbow never agreed on new dates, and so never formed a new contract.[11] Thus, the failed renegotiation did not abrogate the original contract.[12] Nor did Chilkoot ever abandon its position that the original settlement agreement was an enforceable contract.[13] Rainbow's unilateral non-performance and the parties' failure to agree on substitute performance did not turn a valid agreement into an invalid one.

Because the settlement agreement put on record was an enforceable contract, Chilkoot was entitled to the benefit of its bargain. Per the terms of the agreement, Chilkoot became owner of the property when Rainbow's performance deadline passed. We hold that it was error to conclude that the parties had not reached a settlement agreement and to deny Chilkoot's motion to enforce the agreement. We remand with directions to enforce the original agreement.[14]

**B. The Sanctions Against Chilkoot Do Not Survive Reversal Of The Underlying Order.**

Chilkoot argues that the superior court erred in awarding Rainbow $1,000 per day when Chilkoot failed to comply with the court's order. We decline to address this issue, as the sanctions for noncompliance with the court's order in this case do not survive our nullification of that order.

■ The general rule is that sanctions for criminal contempt stand when the underlying order is invalidated on appeal, but that sanctions for civil contempt do not.[15] Civil

---

10. RESTATEMENT (SECOND) OF CONTRACTS § 279 (1981). We have noted that "relief from a stipulation which settles a case may be granted in situations similar to those in which relief from a contract is authorized." The enforcement of the settlement agreement in this case is compelled by the "meaning the parties attached to the terms of the [settlement agreement] at the time [it] was made." *Sprucewood Inv. Corp. v. Alaska Hous. Fin. Corp.*, 33 P.3d 1156, 1162–63, 1164 n. 23 (Alaska 2001) (refusing to "allow [a party] to unilaterally rewrite the contract by non-performance").

11. *See Bradford v. First Nat'l Bank of Anchorage*, 932 P.2d 256, 264–65 (Alaska 1997) (noting that absent substitute contract to which all parties agreed, all parties still bound by original contract).

12. The dissent argues that "[t]he discussion at the hearing may have evidenced a mutual intent to rescind the original settlement agreement." But Rainbow has not made this argument to us. (Rainbow argued only that the superior court had the authority to impose dates not agreeable to Chilkoot, a proposition that all members of the court firmly reject.) Because Rainbow has not made this argument to us, it is waived. *Adamson v. Univ. of Alaska*, 819 P.2d 886, 889 n. 3 (Alaska 1991) ("[W]here a point is given only a cursory statement in the argument portion of a brief, the point will not be considered on appeal." (citing *State v. O'Neill Investigations, Inc.*, 609 P.2d 520, 528 (Alaska 1980)); *Fairview Dev.*,

*Inc. v. City of Fairbanks*, 475 P.2d 35, 36 (Alaska 1970)).

13. The dissent argues that the mention by counsel for Rainbow of "collateral estoppel, etc." at the June 2006 hearing should be interpreted instead to mean that counsel was arguing that Chilkoot was equitably estopped from seeking enforcement of the settlement agreement. But collateral estoppel and equitable estoppel are quite distinct doctrines, and Rainbow has not made the argument to us that Chilkoot is equitably estopped, has not set out the elements of equitable estoppel, and has not even tried to show that the elements of equitable estoppel are met here. Under these circumstances, Rainbow has failed to preserve an equitable estoppel issue for review and did not give Chilkoot a fair opportunity to respond to such an issue in its reply brief. See authorities cited *supra* note 12.

14. In light of our holding that it was error to refuse to enforce the original settlement agreement, the modified agreement in which the superior court "reset" the dates is a nullity. Therefore, we need not address whether it was error to unilaterally substitute new dates over Chilkoot's objection.

15. *See Weidner v. State*, 764 P.2d 717, 721 (Alaska App.1988) (holding that criminal contempt for violation of court's order stands even when underlying order is later found invalid); *see also Blaylock v. Cheker Oil Co.*, 547 F.2d 962, 966 (6th

contempt and criminal contempt are distinguished by the primary purpose behind the contempt. Contempt is civil when the primary purpose is to coerce compliance with the court's orders, and to remedy harm to the other party from the contempt.[16] In cases of civil contempt, the party can end the sanctions at any time by changing its behavior to comply with the court's order.[17] The purpose of criminal contempt, on the other hand, is to punish past conduct;[18] violation of the court's order is complete, and the party can no longer remedy its conduct.[19] Another hallmark of criminal contempt is the intent to vindicate the authority of the court.[20] The interested parties are the party in contempt and the court; criminal contempt sanctions are not primarily intended to benefit the opposing party.[21]

■ These categories often overlap, and it is sometimes difficult to distinguish between civil and criminal contempt.[22] From the record, we conclude that the superior court's primary purpose in imposing the sanctions was coercive and remedial, rather than punitive.

First, the sanctions were coercive in that the court only imposed them prospectively. The court's order for sanctions, entered July 21, stated that the $1,000 per day would

begin accruing on July 24. The sanctions would cease to accrue at any time Chilkoot came into compliance with the order. Moreover, the superior court repeatedly stated that it intended to create an economic disincentive for violation of the order.

Second, although the superior court did not expressly say so, it must have had a remedial intent because it awarded the sanctions to Rainbow rather than making them a fine to the court. The court said: "I probably could have [made the $1,000 per day a fine to the court], but I have no interest in making [Chilkoot] pay a fine.... You know, this is a civil dispute. The state has no interest." This showed a remedial intent to benefit the opposing party, rather than an intent to punish by imposing a fine payable to the court. The court only twice mentioned anything that might be construed as showing a punitive intent.[23] For these reasons, we conclude that the primary purpose in imposing the $1,000 per day fine was coercive and remedial, and thus the sanctions were civil in nature.

Because the contempt sanctions in this case were civil, they do not survive our reversal of the underlying order on which they were based.[24]

---

Cir.1976) (holding that, although criminal contempt survives the reversal of the order violated, "the same cannot be true of civil contempts, which are only remedial").

**16.** *Johansen v. State*, 491 P.2d 759, 763 (Alaska 1971).

**17.** *Stadler v. State*, 813 P.2d 270, 273 (Alaska 1991) (noting that in cases of civil contempt, "the contemnor could have purged the contempt at any time, thereby reducing the amount of restitution he or she would eventually have to pay"); *Cont'l Ins. Cos. v. Bayless & Roberts, Inc.*, 548 P.2d 398, 405 (Alaska 1976) (determining that contempt was criminal and noting that the fine "was not conditioned on any further action by Continental, it was imposed solely for past actions and could not be avoided by any subsequent action on Continental's part").

**18.** *Johansen*, 491 P.2d at 766 n. 27.

**19.** *Gwynn v. Gwynn*, 530 P.2d 1311, 1312–13 (Alaska 1975).

**20.** *Johansen*, 491 P.2d at 764.

**21.** *Cont'l Ins. Cos.*, 548 P.2d at 405 ("The only interested parties in the imposition of [criminal] contempt are the court and Continental—[the opposing party] has no interest in the outcome of the dispute.").

**22.** *Johansen*, 491 P.2d at 764.

**23.** In a colloquy with counsel for Chilkoot, the court said, "I didn't say they were in contempt.... I said they violated the order, and this is a sanction for doing that." (Although the court maintained that it had not held Chilkoot in contempt, the order it signed did precisely that: "[Chilkoot] is found in contempt of court and the court awards sanctions in the amount of $1,000.00 a day...."). In a similar vein, the superior court hinted at a punitive purpose, stating: "[I]f the Court enters an order, it's really nice if people follow it. And frankly, the whole system collapses if it's assumed that people, you know, ignore it and just—and pay nothing for it. In other words, ... that there be no ramifications whatsoever for ignoring court orders."

**24.** Chilkoot raises an additional issue, arguing that the superior court erred in denying its mo-

## V. CONCLUSION

Because it was error to deny Chilkoot's motion to enforce the original settlement agreement, we REVERSE the denial order and REMAND for enforcement of the agreement. Because the modified settlement agreement is invalid in light of our first holding, we REVERSE the sanctions stemming from Chilkoot's noncompliance with that order.

FABE, Chief Justice, with whom WINFREE, Justice, joins, dissenting in part.

FABE, Justice, with whom WINFREE, Justice, joins, dissenting in part.

Today the court directs the superior court to enforce the original settlement agreement between Chilkoot and Rainbow. I agree with the court that the parties entered into an enforceable settlement agreement during the April 2005 hearing and that the absence of Rainbow's signature on the settlement documents prepared later by Chilkoot's counsel did not render the oral settlement agreement unenforceable.[1] But because the statements and conduct of counsel for the parties at the June 2006 enforcement hearing could be viewed as evidence of a mutual agreement to rescind the original settlement agreement, and because I would give Rainbow an opportunity to argue its claim that Chilkoot should be estopped from enforcing the original agreement, I disagree with the court's instructions to the superior court on remand.

First, while the original settlement agreement was enforceable, it is not clear that either party sought enforcement of the original settlement agreement at the June 2006 hearing. According to the agreement, Chilkoot was to pay Rainbow $12,500 by June 1, 2005 if Rainbow substantially removed its equipment from Chilkoot's property by May 15, 2005; any equipment not removed by May 15 was to be forfeited to Chilkoot without further payment by Chilkoot to Rainbow. But by the June 2006 hearing, the time for Rainbow to remove the equipment under the original agreement's terms had passed. Thus the "default" provision, deeming Rainbow's equipment forfeited to Chilkoot, would have been the only part of the agreement subject to enforcement at the June 2006 hearing.[2] In other words, enforcing the original agreement would only have required the superior court to declare that the original oral settlement agreement was enforceable[3] and to enter an order that Chilkoot owned Rainbow's forfeited equipment without any further payment obligations.

But Chilkoot never asked the superior court to declare it the owner of Rainbow's equipment.[4] And the statements and conduct of counsel for the parties at the June 2006 hearing indicate that neither party wanted to enforce the "default" provision. Instead, both parties wanted to "re-key" the performance deadlines, presumably to allow Rainbow the opportunity to remove its equipment and be paid by Chilkoot. Rainbow's counsel represented to the superior court that he was concerned about the "default" possibility and that Chilkoot's counsel had assured him that Chilkoot did *not* want to

---

tion for summary judgment. The motion for summary judgment was made a year before the on-record settlement agreement and was part of the case that the parties settled. Because we hold that the settlement agreement was enforceable, and remand for proceedings consistent with enforcement of that agreement, Chilkoot's summary judgment argument is moot. *See Bridges v. Banner Health,* 201 P.3d 484, 490 (Alaska 2008) (quoting *Wetherhorn v. Alaska Psychiatric Inst.,* 156 P.3d 371, 380 (Alaska 2007)) ("An issue is moot 'if it is no longer a present, live controversy. . . .' ").

1. *See Mullins v. Oates,* 179 P.3d 930, 939 (Alaska 2008) (agreeing that a settlement "as originally articulated at the settlement conference [ ] remained in effect despite the flawed attempt to insert a new term into the final settlement docu-

ments") (citing 1 JOSEPH M. PERILLO, CORBIN ON CONTRACTS § 2.9 (1993) (noting that when parties intend a writing to merely memorialize a prior contract, "the contract is valid even though they try and fail to agree upon the form and terms of the memorial")).

2. *See* Op. at 1016.

3. Indeed, Chilkoot's motion was actually to enforce the *stipulation* of settlement, i.e., to request a declaration that Rainbow was bound by the terms of the oral settlement agreement even though it had not signed the written stipulation prepared later by counsel for Chilkoot.

4. Chilkoot did not ask for Rainbow's equipment in its motion to enforce the agreement.

declare Rainbow in default for failure to meet the performance deadlines:

> Rice [attorney for Rainbow]: First of all, our objection with the agreement is if it was strictly applied, because there are performance deadlines in the agreement.
>
> Court: There were—
>
> Rice: My client has not made it. And our concern is if the Court turned around and said the agreement is going to be enforceable, and since Rainbow did not meet the deadlines, they're automatically in default. Okay?
>
> Court: Uh-huh.
>
> Rice: I have spoken with Mr. Triem [counsel for Chilkoot] about this, and he said, "That's not our intent. Our intent is to re-key the performance deadlines[,]" i.e., start the performance deadlines over.

Chilkoot's counsel, Triem, later stated: "I agree with Mr. Rice that we should re-key the dates, but we cannot re-key them to allow them in there now." Both parties announced that they had no intent to enforce the default provision—yet this is precisely what the court holds them to today.

Despite the superior court's attempt to guide them in negotiations on "re-keying" the dates, the parties were not able to agree on new performance dates and so did not arrive at a modified settlement agreement at the June 2006 hearing.[5] Nonetheless, the discussion at the hearing may have evidenced a mutual intent to rescind the original settlement agreement.[6] Whether Chilkoot and Rainbow intended to rescind their agreement is a question of fact, resolved by looking "not only to the language of the parties, but to all of the surrounding circumstances."[7] Although an agreement to rescind a contract may be implied from the circumstances and conduct of the parties, implied rescission must be based on positive and unequivocal actions.[8] Thus, I would remand to the superior court for a determination whether Chilkoot and Rainbow's stated desires to "re-key" the dates, along with their conduct and the surrounding circumstances, evidenced mutual consent to rescind the settlement agreement. The court faults Rainbow for failing to make this argument on appeal. But Rainbow does maintain that Chilkoot did not ask for "strict enforcement" of the original settlement agreement at the June 2006 hearing and that both parties agreed to "enforcement of the original settlement agreement with re-keying the performance dates."[9]

Second, I disagree with the court's decision to remand for enforcement of the original settlement agreement without allowing Rainbow to argue an estoppel defense to enforcement. Although Rainbow ordinarily would have been obligated to raise such a defense in response to any attempt by Chilkoot to enforce the original oral agreement during the June 2006 hearing, here, at the June 2006

---

**5.** I agree with the court that the parties' failed attempt to "re-key" the performance dates did not "abrogate the original contract" by replacing the original agreement with a modified contract—the parties did not successfully reach a modified agreement.

**6.** *E.g., Knight v. TCB Const. & Design, LLC*, 248 P.3d 178, 181 (Wyo.2011) ("Generally, contracts—even fully executed ones—can be cancelled or rescinded by the mutual consent of the parties." (quoting 29 Samuel Williston, A Treatise on the Law of Contracts § 73:15, at 49 (Richard A. Lord ed., 4th ed. 2003))); *see also* Restatement (Second) of Contracts § 283(1) (1981) ("An agreement of rescission is an agreement under which each party agrees to discharge all of the other party's remaining duties of performance under an existing contract.").

**7.** 29 Williston, *supra* note 6, at 49, 52.

**8.** *Id.* at 50, 52.

**9.** I note that agreeing to "enforcement of the original settlement agreement with re-keying the performance dates" would have been a contract modification, not a rescission. Because Chilkoot and Rainbow were unable to agree upon new performance dates, they did not arrive at a modified agreement that would have replaced the original agreement. *See supra* note 5. But it is not clear what the parties would have done if the superior court had presented them with the option of either enforcing the original deadlines and default provision or rescinding and walking away from their agreement. I conclude that both parties' express statements made at the outset of the hearing that it was "not [their] intent" to place Rainbow "automatically in default" but rather to "re-key the dates" at least creates a question of fact as to whether they intended to rescind the original agreement and re-negotiate a new one.

hearing the parties indicated their interest in setting new dates and "re-keying" the agreement. Because this was the focus of the enforcement hearing, which functioned in large part as a settlement conference on the record, if the superior court were to find no mutual agreement to rescind the original settlement agreement, it should next consider whether Rainbow has a valid estoppel defense to enforcement of the original settlement agreement.

Indeed, the court recognizes that "the parties did not argue the enforceability of the settlement agreement" at the June 2006 hearing.[10] At the beginning of the hearing, Rainbow seemed to explain to the superior court that it had failed to perform because the parties had agreed to "start[ ] negotiating a different agreement." Counsel for Rainbow added that "the concept of collateral estoppel, et cetera, would stop the agreement from being strictly enforced." It appears that Rainbow was actually arguing that the doctrine of *equitable* estoppel should have prevented Chilkoot from seeking enforcement of the settlement agreement. Under Alaska law, if Rainbow reasonably relied on Chilkoot's conduct to its detriment, Chilkoot could be estopped from proceeding with its enforcement action.[11]

If permitted to flesh out this estoppel argument, Rainbow could have claimed that it missed the original performance deadline because it relied on Chilkoot's conduct in initiating negotiations for a new agreement during the time for performance of the first. It is hard to fault Rainbow for its failure to fully develop its estoppel argument at the June 2006 hearing when that hearing was conducted as a negotiation session to "re-key" the agreement by setting new dates for performance. And, contrary to the court's implication that Rainbow was required to develop its estoppel defense in the superior court, Rainbow had no incentive to do so

once it received the relief it sought from the superior court at the conclusion of the June 2006 hearing. Similarly, there was no reason for Rainbow to argue its estoppel defense on appeal because Rainbow apparently had no objection to enforcement of the agreement with the new performance dates. Thus, Rainbow would have had no motive to argue on appeal against enforcement of the agreement with the new dates. Nor is the court's concern that Chilkoot will not have a fair opportunity to respond to Rainbow's estoppel argument justified. Chilkoot may certainly respond to Rainbow's fully developed estoppel defense on remand should Rainbow choose to present one.

In sum, although I agree with the court's decision to reverse the superior court's judgment, I would remand to the superior court to determine first whether there was a mutual agreement to rescind the original settlement agreement, and if not, whether Rainbow has a valid estoppel defense to enforcement of the original settlement agreement.

Therefore, I respectfully dissent.

---

**10.** Op. at 1014.

**11.** *E.g., Osterkamp v. Stiles,* 235 P.3d 193, 196 (Alaska 2010) ("The general elements required for the application of the doctrine of equitable estoppel are the assertion of a position by conduct or word, reasonable reliance thereon by another party, and resulting prejudice." (quoting *Jamison v. Consol. Utils., Inc.,* 576 P.2d 97, 102

(Alaska 1978))); *Sowinski v. Walker,* 198 P.3d 1134, 1147 (Alaska 2008) (explaining that the doctrine of equitable estoppel "bars a speaker from taking a position inconsistent with a prior statement when another person has reasonably and detrimentally relied on the earlier statement" and that the doctrine's purpose is to "protect parties' reasonable expectations").